**Judy LEE, Individually and as next of kin and executrix of the Estate of Glenn R. Lee, deceased, Plaintiff,**

v.

**TOSHIBA MACHINE COMPANY OF AMERICA, Fanuc USA Corporation, Toshiba Machine Co., Ltd., and Fanuc, Ltd., Defendants.**

No. CIV 1-90-0053.

United States District Court,
E.D. Tennessee,
at Chattanooga.

March 10, 1992.

Douglas M. Campbell, Chattanooga, Tenn. and John E. Stephenson, Jr., and Earle B. May, Jr., Atlanta, Ga., for plaintiff.

John Thomas Feeney, Leitner, Warner, Moffitt, Williams, Dooley, Carpenter & Napolitan, Chattanooga, Tenn.; Thomas S. Scott, R. Kim Burnette, Arnett, Draper & Hagood; John B. Fowler, Ambrose, Wilson, Grimm & Durand, Knoxville, Tenn.; and Jon D. Ross, and John A. Coates, Neal & Harwell, Nashville, Tenn., for defendants.

## MEMORANDUM OPINION

JORDAN, District Judge.

This civil action is before the Court for consideration of motions by the defendants Toshiba Machine Co., Ltd. (hereinafter "Japanese Toshiba") and FANUC, Ltd. (hereinafter "Japanese FANUC") to dismiss the plaintiff's claims against them on the ground of the bar of the applicable statute of limitation [docs. 61 and 65, respectively]. These parties were added by an amended complaint filed more than one year after the plaintiff's decedent's death. *See* Tennessee Code Annotated § 28–3–104 (1991 supp.); *see also* T.C.A. § 29–28–103(a) (1980 repl. vol.). From the plaintiff's point of view, these motions present issues of relation back under Fed.R.Civ.P. 15 as it existed before amendments effective December 1, 1991.

The plaintiff's decedent suffered injury on May 25, 1989, and died the next day. His widow, the plaintiff, filed her original complaint in the Hamilton County, Tennessee Circuit Court on January 12, 1990. In her original complaint, the plaintiff sued Toshiba Machine Company of America and FANUC USA Corporation. While the plaintiff identified these defendants in the caption of her original complaint as Japanese corporations, she alleged in the complaint that they are Illinois corporations.

The plaintiff stated causes of action against these two defendants for the allegedly wrongful death of her husband under theories of strict liability in tort, negligence, and failure to warn. She alleged that Toshiba Machine Company of America had designed, manufactured and sold the vertical milling machine which caused her decedent's workplace death by throwing an elbow joint into his chest, and that FANUC USA Corporation had designed, manufactured and sold the computer-operated control panel on this milling machine.

The defendants removed this civil action to this Court on the ground of diversity of citizenship. No issue is presented concerning the existence of diversity jurisdiction, or the procedural sufficiency of the removal. On July 27, 1990, the plaintiff filed her motion [doc. 17] for leave to amend her complaint, to add Japanese Toshiba and Japanese FANUC as defendants. In this motion and in her proposed amended complaint, the plaintiff identified these Japanese corporations as the designers and/or manufacturers of the milling machine and the control panel, respectively, and stated that the defendants named originally are wholly owned American subsidiaries of the Japanese corporations. She stated that she had just learned these facts after diligent inquiry, and that these defendants had timely notice of the commencement of her civil action, and knew or should have known that but for a mistake concerning the corporate identities of all four defendants, she would have named the Japanese corporations as defendants in her original complaint.

The Court granted this motion in an Order filed on August 23, 1990 [doc. 29], reserving any decision regarding the relation back issue. The Clerk filed the amended complaint, tendered with the motion, on August 23 [doc. 30]. There can be no dispute that neither the motion for leave to amend the complaint nor the amended complaint came within one year after the plaintiff's decedent's death.

In support of its motion to dismiss, Japanese Toshiba offers the affidavit of one of its attorneys, R. Kim Burnette, to show that the plaintiff was guilty of inexcusable neglect in not seeking to add Japanese Toshiba as a defendant within the one year allowed by the statute [doc. 62]. Mr. Burnette points to correspondence dated August 4, 1989 from counsel for the plaintiff's

decedent's employer, ABB Combustion Engineering Systems, the intervening plaintiff in this civil action, to counsel for the plaintiff, in which counsel for ABB Combustion Engineering Systems identified the manufacturer of the vertical milling machine as "Toshiba Machine Company of Tokyo, Japan," with an address in Elk Grove Village, Illinois, and counsel in Los Angeles. Also in this correspondence, counsel for ABB Combustion Engineering Systems wrote that the milling machine had a control panel manufactured by FANUC, which "[a]pparently" is a "Japanese manufacturing concern ... with its American headquarters [in] Elk Grove, Illinois."

Mr. Burnette also points to a nameplate on the vertical milling machine on which is stamped or printed "Toshiba Machine Co., Ltd./Tokyo Japan." An instruction manual in the possession of ABB Combustion Engineering Systems identifies its source similarly, and, on one page, identifies "Toshiba Machine Co., Ltd." as the "head office" with a Tokyo address, "Toshiba Machine Co., America" as the "Chicago office" with an Elk Grove Village, Illinois address, and "Toshiba Mecanica do Brasil Ltda." with a Sao Faulo (sic: Paulo?) address. Finally, Mr. Burnette points to material which he obtained from the business reference section of a public library and which shows the affiliation between Japanese Toshiba and Toshiba Machine Company of America.

Japanese FANUC relies upon some of the same material to argue that the plaintiff's claim against it is time-barred. In an affidavit [doc. 67] submitted in support of Japanese FANUC's motion, Susan L. Bell, a legal assistant employed by Japanese FANUC's counsel, provides details concerning the available library reference material which shows the affiliation between Japanese FANUC and FANUC USA Corporation, similar to the material concerning Japanese Toshiba and Toshiba Machine Company of America described in Mr. Burnette's affidavit. There is also evidence in the record to show that the control panel cabinet attached to the Toshiba vertical milling machine had a plate on its back which read in part, "FANUC LTD/MADE IN JAPAN" [see doc. 68, exs. J and L]. In addition, Japanese FANUC has filed the declaration of the manager of its legal department, Yoshihiro Fukai [doc. 66, supplemented in doc. 75].

Mr. Fukai states, in the pertinent portions of his declaration, that on August 7, 1990, the vice president of FANUC USA Corporation sent to the president of Japanese FANUC a written communication, via telecopier, concerning this and other products liability litigation, and that the vice president of FANUC USA Corporation stated in this communication the date and place of the plaintiff's decedent's fatal accident, the identity of the plaintiff, the identities of the four defendants, the date of the commencement of this civil action, the fact of its removal to this Court, and the fact of the amendment of the complaint to name Japanese Toshiba and Japanese FANUC as additional defendants. Mr. Fukai states, "This communication was the first notice received from any source by FANUC LTD or by any of its officers, directors, or employees, that a lawsuit had been filed in the United States against FANUC LTD or FANUC USA."

Mr. Fukai admits that Japanese FANUC had notice in 1989 of the plaintiff's decedent's fatal accident. The vice president of FANUC USA Corporation, in his August 7, 1990 communication to the president of Japanese FANUC, referred to the fact that FANUC USA Corporation had informed Japanese FANUC of this occurrence "last year." Mr. Fukai says that neither Japanese FANUC nor its American subsidiary has been able to locate any written record of this 1989 communication.

In FANUC USA Corporation's first answer [doc. 3] to the original complaint, filed on February 22, 1990, in response to the allegation,

> At all times material herein, Fanuc [i.e., FANUC USA Corporation] was and is now engaged in the business of designing, manufacturing, and selling certain electronic and/or computer operated control panels for use as component parts in various types of industrial machines and equipment, specifically including the ver-

tical milling machines designed, manufactured, and sold by Toshiba [i.e., Toshiba Machine Company of America],

this defendant answered, "Admitted." However, on April 25, 1990, FANUC USA Corporation moved for leave to amend its answer to change its response to this allegation to a denial [doc. 7]. In its answer [doc. 8] to the original complaint, filed on May 18, 1990, Toshiba Machine Company of America denied that it was the manufacturer of the vertical milling machine, and admitted that it was the seller of the machine.

The plaintiff, in her responses [docs. 71 and 76] to the motions under consideration, points to the timing of FANUC USA Corporation's amendment of its answer and of Toshiba Machine Company of America's answer as evidence that she was "sandbagged" (the plaintiff's counsel's word). Counsel for the plaintiff contend that they were misled or confused—not purposefully—by the letter from counsel for ABB Combustion Engineering Systems. Then, counsel for the plaintiff say, when they sent a demand letter to "Toshiba Machine Company" (at Toshiba Machine Company of America's address) and to "FANUC U.S.A. Corporation," they received no response which might have eliminated their confusion. Once the plaintiff commenced her civil action, the delay in the amendment of FANUC USA Corporation's answer and extension of the time within which Toshiba Machine Company of America was required to answer led to a situation in which the plaintiff received formal denials of these defendants' responsibility for the manufacture of the milling machine and of the control panel only days before the expiration of the limitation period. Discovery came too late to remedy this situation.

These features of the factual and procedural history of this case go to the issue of inexcusable neglect argued by the movants. Referring to the four criteria for relation back stated in Fed.R.Civ.P. 15(c), as construed in *Schiavone v. Fortune,* 477 U.S. 21, 29, 106 S.Ct. 2379, 2384, 91 L.Ed.2d 18 (1986), the plaintiff argues that these criteria were fulfilled before the expiration of the limitation period in this case by the provision to Japanese Toshiba and Japanese FANUC of actual notice of this lawsuit as originally pleaded. Japanese Toshiba admits that its American subsidiary advised it of the lawsuit soon after the service of process upon the subsidiary [*see* doc. 71, app. A, ex. 18 and app. B, para. 9].

With respect to Japanese FANUC, however, whether there was actual notice is not so clear. As stated above, Yoshihiro Fukai, the manager of Japanese FANUC's legal department, denies in his declaration filed in this civil action that his employer received any notice of this lawsuit until after the plaintiff's amendment of her complaint. Yoshitoshi Shimoi, the Director and General Manager of Administration of FANUC USA Corporation, testified during his deposition as his corporation's Rule 30(b)(6) witness that he had not seen fit to pass the plaintiff's counsel's demand letter on to the parent corporation; the letter was addressed to FANUC U.S.A. Corporation, and Mr. Shimoi forwarded a copy of it to FANUC USA Corporation's insurance agent or carrier.

Mr. Shimoi did, however, communicate the fact that the lawsuit was pending to an officer or employee of Japanese FANUC before the expiration of the limitation period. His deposition testimony concerning this oral communication was as follows:

Q: Okay. Why did you not notify FANUC, Limited that a lawsuit had been filed that involved one of the products produced by—manufactured by FANUC, Limited?

A: You mean right after I received the document from the State of Tennessee in January?

Q: Yes, sir.

A: I didn't make any report in written form, yet I made a report orally.

Q: Okay. Who did you report to?

A: You mean when I reported orally to FANUC?

Q: Yes.

A: Mr. Fakai.

Q: And was this in January of 1990?

A: It's not.

Q: Is that yes.

A: No.

Q: When was it?

A: February of 1990.

Q: And Mr. Fukai is a FANUC, Limited employee; is that right?

A: Yes.

Q: Did you send Mr. Fukai a copy of the complaint?

A: I didn't send.

Q: Tell me what you and Mr. Fukai discussed in your telephone conversation?

A: I didn't talk to him over the telephone.

Q: I'm sorry, how did you speak with him?

A: In that year, February, I have another reason to visit our headquarters, and that time I talked to Mr. Fukai saying that there was an accident and we were sued. I told him about the fact that the complaint was filed in the State of Tennessee. That's what I told him.

Q: Okay. What else did you tell him?

A: Since I went to Japan that time, there was many other agenda to do, so I was really busy in that time period producing other kinds of documentations.
So I kind of bumped into Mr. Fukai at the floor; and at that time, I communicated with him and said to him that there has been a complaint filed in the State of Tennessee.

Q: Did you tell him anything else besides that there was a complaint filed in the State of Tennessee?

A: As long as I recall, that's the only subject we talked about.

Q: And what did Mr. Fukai say to you about that subject?

A: Is that right.

THE INTERPRETER: This translation could be not appropriate because there are many ways of translating that, but asou means is that right.

MR. STEPHENSON: That may be the only Japanese phrase that most of us at this table have any familiarity with.

Q: Did you tell Mr. Fukai that the lawsuit that was filed involved the accident that you had previously notified FANUC, Limited about?

THE INTERPRETER: Your question is—I'm not myself clear. Could you rephrase again, please?

Q: Did you tell Mr. Fukai that this complaint that you had received related to the accident that you had previously notified FANUC, Limited about in Tennessee?

A: It's very difficult to answer because I might have talked about that, but I'm not quite sure because we just communicated briefly, so I might not have referred to that to him. I am not quite sure.

Q: Did you have any conversations about the fact that this lawsuit had been filed with anybody else at FANUC, Limited during that trip?

A: I didn't talk regarding this complaint to anybody other than Mr. Fukai during my trip to Japan that particular time period.

Q: Okay. Did you have any conversations with anybody else at FANUC, Limited about this complaint during the remainder of 1990?

A: I didn't talk to anybody, but I sent one report.

Q: Okay. When did you send that report?

A: I recall August, 1990.

*Deposition of Yoshitoshi Shimoi,* October 23, 1991, at p. 84, 1. 15 through p. 87, 1. 22. In a second supplemental declaration [doc. 106], Mr. Fukai of Japanese FANUC's legal department, on the assumption that he is the person to whom Mr. Shimoi was referring during his deposition, states that he does not recall any such conversation with Mr. Shimoi.

For the purposes of considering Japanese Toshiba's and Japanese FANUC's motions, the Court is satisfied that the parent corporations had actual notice of this lawsuit before the expiration of the limitation period. Furthermore, a reasonable inquiry in the exercise of due diligence—simply reading the plaintiff's allegations in her original

complaint—should have told these parent corporations that the plaintiff intended to sue the manufacturers of the milling machine and the control panel involved in her husband's fatal accident.

This finding of actual notice makes it unnecessary to decide whether constructive notice is sufficient under Rule 15(c), *compare Allgeier v. United States*, 909 F.2d 869, 874 n. 6 (6th Cir.1990) (the ruling in *Schiavone* is that "an amended complaint naming the proper defendant does not relate back to a timely but flawed original complaint where the would-be defendant did not receive actual notice of the suit within the statute of limitation period"), *with Berndt v. State of Tennessee*, 796 F.2d 879, 884 (6th Cir.1986) (citations omitted) (*dictum*) ("We believe that Rule 15(c) does not require that the new defendants received actual notice. It is enough that the new defendants received constructive notice of the suit. Under some circumstances, notice can also be imputed to a new defendant.").[1]

This finding of actual notice also makes it unnecessary to decide whether a parent corporation has such an identity of interests with its subsidiary that notice to the latter is notice to the former for the purposes of Rule 15(c). *See, e.g.*, 6A C. Wright, A. Miller & M. Kane, FEDERAL PRACTICE AND PROCEDURE § 1499 at p. 147 and n. 6 (2d ed. 1990), and authorities cited therein. The Supreme Court in *Schiavone* declined to adopt or to reject "an 'identity-of-interest' exception under which an amendment that substitutes a party in a complaint after the limitations period has expired will relate back to the date of the filing of the original complaint,"

477 U.S. at 28–29, 106 S.Ct. at 2834 (footnote omitted), but the Court of Appeals for the Sixth Circuit in *Berndt, supra*, 796 F.2d at 884 and n. 3 (citations omitted), suggested in *dictum* that imputed notice is available in some cases. *See also Haynes v. Locks*, 711 F.Supp. 901 (E.D.Tenn.1989) (*per* Hull, then C.J.), in which this Court held that service of process upon a subsidiary was constructive notice to two other corporations, but in which constructive notice was unavailing because service occurred after the bar date.

This finding of actual notice, however, is not sufficient to withstand Japanese Toshiba's and Japanese FANUC's motions. The plaintiff's fundamental error is in her argument that Rule 15(c) applies to this case at all.

When she amended her complaint, the plaintiff stated causes of action against all four named defendants, and not all of her causes of action related to alleged design or manufacturing defects. She seeks relief under various theories of recovery against each of these four defendants. In this circuit, "an amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." *Leitch v. Lievense Insurance Agency (In re Kent Holland Die Casting & Plating, Inc.)*, 928 F.2d 1448, 1449 (6th Cir.1991), *quoting Marlowe v. Fisher Body*, 489 F.2d 1057, 1064 (6th Cir.1973). "The 1966 amendment to Fed.R.Civ.P. 15(c) which permits correction of misnomers does not permit the addition or substitution of new parties." *Marlowe v. Fisher Body, supra*, 489 F.2d at 1064 (citation omitted).[2]

---

**1.** This Court has applied *Berndt* in at least one case, *Richmond v. McElyea*, 130 F.R.D. 377 (E.D.Tenn.1990) (*per* Murrian, Magis. J.), in which, in a civil rights action alleging an assault by unnamed officers of the Knox County (Tennessee) Sheriff's Department, an amended complaint which substituted named officers for defendants identified previously as John Does was held to relate back under Rule 15(c). Decisive factors in *Richmond* were that the same attorney, a Knox County deputy law director, who represented the originally named defendants represented the officers added as defendants added by the amended complaint, the officers were employed by one of the originally named

defendants, Knox County, and the investigation undertaken by Knox County in response to the original allegations necessarily included discussions with the officers on duty the night of the plaintiff's arrest, so that the officers knew or should have known that they were intended defendants. *Id.* at 381–82. *See also Northcutt v. Goble*, 1988 WL 78171, 1988 U.S. Dist. LEXIS 7736 (E.D.Ky.) (*per* Bertelsman, J.).

**2.** Judge Bertelsman's conclusion in *Northcutt v. Goble, supra* n. 1, slip op. at 7, that past Sixth Circuit authority which "strictly interpreted Rule 15(c) to allow for the correction of misno-

*Berndt v. State of Tennessee, supra,* and *Richmond v. McElyea* and *Northcutt v. Goble, supra* n. 1, do not compel a different conclusion. In *Berndt,* the *pro se* plaintiff's claims against the State of Tennessee and one of its mental health facilities were necessarily dismissed under the Eleventh Amendment, but the court found it obvious from the allegations in his complaint that the plaintiff was trying to sue some or all of the "authorities" and "staff" of the State and the facility. In the two cited district court cases, the plaintiffs pleaded in their original complaints allegations against unknown persons, then by their amendments identified the actors.

Here, the plaintiff was simply in error about who manufactured what. There was no misnomer; the plaintiff, without knowing it at first, wanted to sue all four corporations, the manufacturers as well as the marketer and the service company. It was her responsibility to investigate and discover the pertinent facts, and she was not entitled to any tolling of the limitation period while she was doing so. *Gibson v. Lockwood Products Division of J.L. Underwood,* 724 S.W.2d 756 (Tenn.App.1986), *permission to appeal denied, id.* (Tenn. 1987). This Court has applied *Lockwood Products,* in *Haynes v. Locks, supra, cited with approval in Simmons v. South Central Skyworker's, Inc.,* 936 F.2d 268, 269–70 (6th Cir.1991).

It is perfectly legitimate for a business enterprise to be organized as a corporation with wholly owned, corporate subsidiaries. The law treats such parent and subsidiary corporations as separate parties in the absence of strong evidence why their separateness should be disregarded. *See, e.g., Tennessee Valley Authority v. Exxon Nuclear Company, Inc.,* 753 F.2d 493, 497–98 (6th Cir.1985), and *Continental Bankers Life Insurance Company of the South v. Bank of Alamo,* 578 S.W.2d 625, 631–37 (Tenn.1979). All of the evidence on point in this record tends to show that the subsidiaries operated independently of their par-

mers only, and did not allow relation back of an amended complaint where the parties were added or substituted after the limitations period had run" was "overruled ... *sub silentio*" by

ents. There is certainly not in this record any evidence that the operation of either of the American subsidiaries was a sham or fraudulent in any respect. There is therefore no reason why the outcome in this case should differ from the outcome in a case in which, for example, a product liability plaintiff sued an independent distributor believing that it was the manufacturer of the product.

The plaintiff contends as "an aside" (*see, e.g.,* Plaintiff's Brief in Opposition to Toshiba Limited's Motion for Summary Judgment [doc. 71] at p. 8, n. 2) that the defendants' and their attorneys' failure to advise her of the true relationships among these corporations should estop Japanese Toshiba and Japanese FANUC from relying on the statute of limitation. The plaintiff cites no authority in support of this "aside," and the Court cannot take it seriously. The defendants had no obligation to assist the plaintiff in the preparation of her lawsuit. Their obligation was to respond to pleadings and to discovery requests honestly, and to advise of errors in their responses when they discovered them. Regardless of the plaintiff's counsel's accusation of "sandbagging," the Court does not find that the defendants' former and present counsel acted impermissibly in this case.

*In re Kent Holland Die Casting & Plating, supra,* compels this Court to dismiss as time-barred the plaintiff's claims against Japanese Toshiba and Japanese FANUC. This result makes it unnecessary to address Japanese FANUC's argument that to compel it to defend against this civil action in this forum would deny it due process.

For the reasons stated, the Court will grant the motions under consideration.

*Berndt v. State of Tennessee, supra,* appears to be refuted completely by *In re Kent Holland Die Casting & Plating,* decided after *Berndt* and *Northcutt.*