**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff,**

v.

**REGENCY WINDSOR MANAGEMENT CO. and Regency Oakbrook, Ltd., jointly and severally, Defendants.**

No. 1:93–CV–361.

United States District Court, W.D. Michigan, Southern Division.

Aug. 2, 1994.

Laura A. Brodeur, EEOC, Detroit Dist. Office, Detroit, MI, for plaintiff.

Terry J. Mroz, McShane & Bowie, Grand Rapids, MI, for defendants.

## MEMORANDUM OPINION

McKEAGUE, District Judge.

This is an action under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.* Plaintiff Equal Employment Opportunity Commission ("EEOC") alleges defendant employers Regency Windsor Management Co. ("Windsor") and Regency Oakbrook Ltd. ("Oakbrook") unlawfully discharged Dorothy Wright from employment because of her age. Now before the Court are three motions for summary judgment.

## I. OAKBROOK'S MOTION FOR SUMMARY JUDGMENT

On February 25, 1994, the Court issued an order granting plaintiff leave to amend its complaint so as to add Oakbrook as a defendant in this case. Oakbrook now asks the Court to dismiss the claim against it as barred by the applicable statute of limitations. Under 29 U.S.C. § 626(e), in relevant part, an action under the ADEA must be commenced within two years after the claim accrued. Dorothy Wright was discharged on May 16, 1991. The claim against Oakbrook will thus be time-barred unless the amended complaint is deemed to relate back to the date the original complaint was filed, May 10, 1993. Oakbrook contends the prerequisites to relation back, set forth at Fed.R.Civ.P. 15(c)(3), are not satisfied here.

Under Rule 15(c)(3), in relevant part, an amendment of a pleading which changes the party or the naming of the party against whom a claim is asserted relates back to the date of the original pleadings if, within 120 days after the filing of the original complaint, the party to be brought in by amendment (A) had received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (B) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against it.

Here, the original complaint named Windsor only as the defendant employer. Dorothy Wright served as a leasing consultant/leasing manager of an apartment complex in Battle Creek owned by Oakbrook. The apartment complex was managed by Oakbrook's agent, Windsor. When it became apparent during discovery that both Oakbrook and Windsor, and both of them jointly, might satisfy the definition of "employer" under the ADEA, plaintiff moved and was permitted to add Oakbrook.

Having reviewed the parties' briefs and heard the parties' arguments on this point, the Court is persuaded that the requirements of Rule 15(c)(3), as set forth above, are satisfied. Considering the agency relationship between Oakbrook and Windsor, and the shared responsibilities for management of the Battle Creek apartment complex, the Court concludes that Oakbrook was aware of this litigation early on, must have known that it could or should properly have been named as defendant, and is not prejudiced in maintaining a defense on the merits.

In the Sixth Circuit, however, Rule 15(c) has been construed as permitting only correction of misnomers, not the addition or substitution of new parties. *Leitch v. Lievense Ins. Agency,* 928 F.2d 1448, 1449–50 (6th Cir.1991); *Marlowe v. Fisher Body,* 489 F.2d 1057, 1064 (6th Cir.1973); *Lee v. Toshiba Machine Co. of America,* 804 F.Supp. 1029, 1034–35 (E.D.Tenn.1992). "An amendment which adds a new party creates a new cause of action and there is no relation back to the original filing for purposes of limitations." *Leitch, supra,* 928 F.2d at 1449.

Plaintiff's first amended complaint does not correct a "misnomer;" it adds a party. To the extent plaintiff may have erred in its determination that Windsor alone was Dorothy Wright's employer, it is an error for which Rule 15(c) provides no remedy. It was plaintiff's responsibility to investigate and discover the pertinent facts and it is not entitled to any tolling of the limitation period

while doing so. *Lee, supra,* 804 F.Supp. at 1035. Moreover, to the extent plaintiff impliedly argues Oakbrook should be equitably estopped from asserting the statute of limitations because its agent Windsor "sandbagged" or failed to reveal the true relationships of the parties, the argument must be rejected because not adequately supported—legally or factually. See *id.*

Accordingly, the Court concludes the claim against Oakbrook does not relate back and is therefore time-barred. Oakbrook's motion for summary judgment will be granted.

## II. WINDSOR'S "SECOND" MOTION FOR SUMMARY JUDGMENT

■ Defendant Windsor moves for summary judgment contending it was not Dorothy Wright's employer. Windsor argues Oakbrook was Wright's actual employer and that it merely served as agent through which Oakbrook's supervisory control was exercised. Plaintiff EEOC responds by acknowledging that Oakbrook may very well have been the actual employer, but maintains that Windsor may also be liable under the ADEA as an agent of the employer or as a "joint employer."

"Employer" is defined under the ADEA as follows:

> A person engaged in an industry affecting commerce who has twenty or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year.... The term also means (1) any agent of such a person....

29 U.S.C. § 630. Thus, Windsor's status as Oakbrook's agent may qualify it for treatment as an employer if Oakbrook was an "employer" as defined by the ADEA. In support of its own motion for summary judgment, however, Oakbrook has conclusively demonstrated that it did not employ twenty or more persons for each of twenty or more calendar weeks in 1991. It follows that Oakbrook was not an employer under the ADEA. See *Zimmerman v. North American Signal Co.,* 704 F.2d 347, 353–54 (7th Cir.1983); *Rogers v. Sugar Tree Products, Inc.,* 824 F.Supp. 755, 760 (N.D.Ill.1992); *Lord v. Casco Bay Weekly, Inc.,* 789 F.Supp. 32, 34

(D.Me.1992). Windsor cannot therefore be deemed an employer based solely on its agency relationship with Oakbrook.

■ Windsor may nonetheless be deemed an employer under the joint employer doctrine. Whether Windsor exercised sufficient control over employees to constitute a joint employer is a factual determination requiring the Court to consider such factors as authority to hire, fire and discipline employees, promulgation of work rules and conditions of employment, issuance of work assignments and instructions, and supervision of employees' day-to-day activities. *Rivas v. Federacion De Asociaciones Pecuarias,* 929 F.2d 814, 820–21 (1st Cir.1991).

Not surprisingly, the parties' respective evaluations of the above factors yield opposite results. Consistent with this disparity, this Court's review of the voluminous filings in this case leads to the settled conclusion that genuine issues of material fact remain. It is clear only that Oakbrook and Windsor shared authority to control the compensation, terms, conditions and privileges of employment for workers at the apartment complex. Oakbrook clearly appears to have been the direct employer. Whether Windsor exercised sufficient control to be deemed a joint employer is a question for the trier of fact. Accordingly, defendant Windsor's second motion for summary judgment must be denied.

## III. WINDSOR'S "FIRST" MOTION FOR SUMMARY JUDGMENT

Defendant Windsor's first motion for summary judgment attacks plaintiff's age discrimination claim on the merits. Plaintiff's claim rests essentially on two evidentiary theories: direct evidence and circumstantial evidence.

### A. Direct Evidence

"Direct evidence of discrimination allows a plaintiff to proceed without meeting the requirements of a prima facie case set forth in *McDonnell Douglas [Corp v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) ]." *LaPointe v. United Autoworkers Local 600,* 8 F.3d 376, 379 (6th Cir.1993). See part B, *infra.*

Dorothy Wright, leasing manager, was 62 years old at the time of her discharge. She was an at-will employee. She had been employed in a similar capacity since 1986. She was terminated on May 16, 1991, by Thomas Baragar, resident manager of the apartment complex, an Oakbrook employee. The termination letter indicates she was discharged because of her negative and uncooperative attitude and discourteous manner.

The direct evidence that she was terminated because of her age consists of evidence that Randall Nordman, Windsor's direct manager, favored filling leasing agent positions with youthful persons. Nordman was Thomas Baragar's superior. According to a statement given by Larry Bush, who occupied Baragar's position until November 1989, Nordman had repeatedly stressed to him "that younger people should be working as leasing agents".... "to attract the 'yuppie' clientele" in the Battle Creek area. While Nordman never actually told Bush to terminate Wright, Bush believed he had implied this desire. When Bush defended Wright as a good employee, Nordman is said to have responded that "she did not meet the company's needs."

In his deposition, Nordman testified he did not specifically recall having such discussions with Bush. He did not direct Bush or Baragar to discharge Wright, although he did ultimately approve or agree with Baragar's decision to do so. Nordman acknowledged that Wright was a good leasing agent. He also acknowledged that he had expressed to both Bush and Baragar his impression that young leasing agents were more effective in relating to the renting population Oakbrook hoped to attract, i.e., young professional people or young people with families. Nordman explained that he did not mean to suggest that Wright should be replaced; only that if changes were contemplated in the future, and all other things being equal, younger leasing agents should be preferred.

Windsor responds with the ten-page affidavit of Thomas Baragar, detailing the reasons for his decision to discharge Ms. Wright. The reasons include:

— Wright's resistance to the recommendations of a leasing consultant, Kandi Stewart, who assisted in professionalizing the leasing staff at the apartment complex;

— Kandi Stewart's negative assessment of Wright, finding her to be set in her ways, lacking enthusiasm and leadership ability, and not positioned correctly at the apartment complex;

— the sales and marketing director's (Dawn Ashcroft's) assessment that Wright was a "first-time opinionated" person whose attitude needed to be changed for the benefit of the apartment complex;

— observations and complaints of co-employees and tenants relating to Wright's attitudes and demeanor.

These reasons are further substantiated in the record. The Baragar affidavit also describes three occasions when Nordman and/or Baragar counselled Wright on deficiencies in her performance and required improvement. Baragar states Wright was not discharged because of her age, but "because, after our repeated attempts to work with her, she simply could not or would not adjust her attitudes or behavior toward tenants, prospective tenants and employees."

Plaintiff contends the conflictual evidence presented by the parties creates a genuine issue of fact that precludes summary judgment. Yet, only genuine issues of *material* fact preclude summary judgment. An issue of fact concerns "material" facts only if establishment thereof might affect the outcome of the lawsuit under governing substantive law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). That is, evidence of Randall Nordman's bias in favor of youthful leasing agents creates a genuine issue of material fact under the governing law only if there is evidence that such bias rendered Wright's age a factor in the decision to terminate her and that "but for" this factor, she would not have been terminated. *Phelps v. Yale Security, Inc.,* 986 F.2d 1020, 1026 (6th Cir.1993); *Gagne v. Northwestern Nat'l Ins. Co.,* 881 F.2d 309, 314 (6th Cir.1989).

Here, although Baragar may have been aware of his supervisor's bias, there is no

direct evidence that such bias played a role in Baragar's decision to terminate Wright. Although Nordman approved Baragar's decision, it was Baragar's decision to terminate Wright. The only bases for concluding that Baragar's decision was influenced by Nordman's bias are speculative. This speculation is based first on Bush's statement that *he* inferred that Nordman wanted *him* to replace Wright. Yet, Bush's impression, assuming it was accurate, predated Wright's discharge by at least 18 months. It is too far removed from the termination decision to be reliable evidence of the factors contributing to the decision. See *Phelps, supra*, 986 F.2d at 1026; *Guthrie v. Tifco Ind.*, 941 F.2d 374, 378–79 (5th Cir.1991). Moreover, Bush's impression predated all of the facts and circumstances cited by Baragar as reasons for his decision. Bush's impression, standing alone, thus has little probative value.

Yet, plaintiff persists, Bush's impression does not stand alone. Plaintiff cites the affidavit of Wilbur Coville. Coville worked in the maintenance department at the apartment complex from 1981 to 1993. In 1992, at age 62, he was demoted from his maintenance supervisor position under circumstances which led him to believe he was discriminated against because of his age. But more importantly, his affidavit relates the substance of two encounters he had with Nordman:

> While I was maintenance supervisor, one of my employees was Clair Hayward (age 59). I was instructed by Randy Nordman to get rid of Clair. I had thirty days to do so. Nordman stated "we (Regency) couldn't have that 'old man' around here because he doesn't known what he is doing." To satisfy myself, I had Clair take a written maintenance examination (regularly used by Regency) to prove his competency in the maintenance area. Clair scored 97%. I told Nordman about the test score, however, his only reply was "I meant what I said" "you've got thirty days to get rid of him." I talked to Clair and suggested that he take any job he could find. I told him that management was putting pressure on me, but didn't come right out and tell him what Nordman had said. Soon after that, Clair resigned and

took a maintenance job with Old Kent Bank.

Plaintiff contends the Coville affidavit represents evidence that Nordman's bias influenced personnel decisions at the apartment complex.

This evidence, too, is ambiguous and entitled to little weight. Although Nordman purportedly referred to Hayward as an old man, he instructed Coville to discharge him because "he doesn't know what he is doing." Hayward may or may not have been incompetent, notwithstanding his 97% score on a written examination. Further, the fact is that Hayward was not fired after all. Coville's affidavit offers no direct evidence that Baragar's decision to discharge Wright was influenced by Nordman's bias.

Conversely, Baragar's affidavit expressly and specifically refutes plaintiff's speculation that Wright's age was a factor. Furthermore, even if there were a basis for imputing Nordman's bias to Baragar, it would still constitute only weak evidence that Wright was discharged because of her age. Nordman's admitted bias is in favor of hiring younger employees, not discharging older ones. See *White v. Westinghouse Elec. Co.*, 862 F.2d 56, 61 (3d Cir.1988). His discussions of this preference with Bush and Baragar are too abstract and ambiguous to be deemed sufficient evidence that Wright's discharge was motivated by age discrimination. See *Phelps, supra*, at 1025, *Gagne, supra*, at 314; *Nesbit v. Pepsico, Inc.*, 994 F.2d 703, 705 (9th Cir.1993). Similarly, Coville's affidavit concerns collateral matters and is of ambiguous significance.

The "direct" evidence of age discrimination cited by plaintiff is insufficient to justify a reasonable jury in concluding that Wright would not have been discharged but for her age. The direct evidence is thus insufficient to create a genuine issue of material fact that would preclude summary judgment.

**B. Circumstantial Evidence**

Plaintiff may also prove its age discrimination claim through circumstantial evidence giving rise to an inference of discriminatory animus. Such evidence is evaluated through a tripartite burden-allocation scheme estab-

lished in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–04, 93 S.Ct. 1817, 1824–25, 36 L.Ed.2d 668 (1973) and summarized as follows:

> First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reasons for the employee's rejection." Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.

*Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 252–53, 101 S.Ct. 1089, 1093–94, 67 L.Ed.2d 207 (1981) (citations omitted); *Gagne,* 881 F.2d at 312–313.

The elements of a prima facie case of age discrimination require plaintiff to show that (1) Wright was a member of the protected class, i.e., that she was between the ages of 40 and 65 years of age; (2) that she was subjected to an adverse employment action; (3) that she was qualified for the particular position; and (4) that she was replaced by a person not a member of the protected class. *Id.* at 313. Plaintiff has satisfied these requirements.

Windsor questions whether the fourth element is satisfied, contending that Wright was not replaced by a younger person; her duties were assumed by other remaining employees. See *Lilley v. BTM Corp.,* 958 F.2d 746, 752 (6th Cir.1992). It is undisputed, however, that on the day Wright was discharged, Julia Woolford, a part-time 23–year old leasing agent, was promoted to full-time status. Though she was an existing part-time employee, her promotion to full-time status for the purpose of handling Wright's former duties is sufficiently analogous to replacement by a younger new hire to satisfy the fourth element. See *Wilkins v. Eaton Corp.,* 790 F.2d 515, 521 (6th Cir.1986).

It is also readily apparent that defendant Windsor has rebutted the prima facie case by articulating legitimate nondiscriminatory rea-sons for Wright's discharge. See part A, *supra.* Plaintiff, in turn, must show the given reasons are pretextual and that age discrimination was the real reason.

Plaintiff may do so by demonstrating: (1) that the stated reasons for the firing had no basis in fact; (2) that the stated reasons for the firing were not the actual reasons; or (3) that the stated reasons for the firing were insufficient to explain the discharge. *Barnhart v. Pickrel, Schaeffer & Ebeling Co.,* 12 F.3d 1382, 1390 (6th Cir.1993). Plaintiff here attempts to discredit Windsor's stated reasons by the second method. Kandi Stewart's negative assessment of Wright is dismissed as the product of a personality clash. The cited complaints of co-workers and tenants are characterized—not without support—as stale, petty or exaggerated. Plaintiff presents evidence that Wright was generally recognized as a competent and successful leasing agent who comported herself professionally and courteously.

Plaintiff thus disputes many of the facts underlying Windsor's given reasons and succeeds in casting doubt upon them. This, in itself, is not enough. *Irvin v. Airco Carbide,* 837 F.2d 724, 726 (6th Cir.1987); *Triplett v. Electronic Data Systems,* 710 F.Supp. 667, 672 (W.D.Mich.1989), *aff'd* 900 F.2d 260 (1990). Plaintiff has not succeeded in showing that the given reasons are false; but has shown that Wright's cited shortcomings may not have been that serious and represent only questionable justification for discharge. In an at-will employment relationship, Windsor need not have had "just cause" for discharge. In fact, " 'just cause' arguments must not be allowed to creep into an employment discrimination lawsuit." *Manzer v. Diamond Shamrock Chemicals Co.,* 29 F.3d 1078 (6th Cir.1994). Pretext is not established merely by showing that Windsor exercised unsound business judgment in discharging Wright. *Lewis v. Sears, Roebuck & Co.,* 845 F.2d 624, 633 (6th Cir.1988); *Peterson v. King Tree Center, Inc.,* 722 F.Supp. 360, 363 (S.D.Ohio 1989). On the other hand, the reasonableness of the stated reasons may be probative of whether they are pretextual. *Lewis, supra,* 845 F.2d at 633. The more unusual or idiosyncratic the business judg-

ment, the more likely the given reasons will be found to be pretextual. *Id.*

What plaintiff must do, in order to show that the stated reasons did not actually motivate Wright's discharge, is demonstrate that the "evidence of age discrimination overwhelms, or at least would permit a reasonable juror to conclude that it overwhelms, [Windsor's] non-discriminatory reasons." *Manzer, supra.* Windsor's reasons cannot be shown to be a pretext for discrimination unless plaintiff demonstrates *both* that the reasons are false *and* that age discrimination was the real reason. *St. Mary's Honor Center v. Hicks,* —— U.S. ——, ——, 113 S.Ct. 2742, 2752, 125 L.Ed.2d 407 (1993).

█ Plaintiff has not definitively demonstrated that the stated reasons are false, but has cast serious doubts upon them and has presented an evidentiary basis upon which a reasonable person could find them disingenuine or unbelievable. When this doubt is considered in light of the elements of plaintiff's prima facie case, it may give rise to a "suspicion of mendacity," creating a question of fact as to whether age discrimination was the real reason. *Id.,* —— U.S. at ——, 113 S.Ct. at 2749; *Manzer, supra.* Further, when plaintiff's direct evidence of discrimination (see part A), weak but not insignificant, is added to the mix, a question of fact most assuredly arises.

This conclusion is further buttressed by plaintiff's statistical evidence. Plaintiff observes that from 1988 to 1991, Randall Nordman managed four apartment complexes for Windsor. At the time of Wright's discharge on May 16, 1991, it appears she was one of only three out of 42 leasing agents at the four complexes who were not under age 40. Windsor does not dispute the numbers, but disputes their significance.

Indeed, without evidence of (1) the ages of leasing agents hired and terminated during the relevant period, (2) the composition of the pool of qualified applicants for any open positions, and (3) the composition of the same segment of employees prior to Nordman's involvement, plaintiff's proffered statistical evidence is of limited probative value. It is certainly not sufficient to warrant a reasonable inference that Wright was discharged because of her age. See *LeBlanc v. Great American Ins. Co.,* 6 F.3d 836, 848–49 (1st Cir.1993); *Fallis v. Kerr–McGee Corp.,* 944 F.2d 743, 746–47 (10th Cir.1991); *Simpson v. Midland–Ross Corp.,* 823 F.2d 937, 944 (6th Cir.1987); *Smith v. General Scanning, Inc.,* 876 F.2d 1315, 1321 (7th Cir.1989); *Stanfield v. Answering Service, Inc.,* 867 F.2d 1290, 1293 (11th Cir.1989). But viewed in conjunction with the questionable nature of the stated reasons for Wright's discharge, the elements of plaintiff's prima facie case, and the direct evidence of age discrimination, the statistical evidence lends support to the establishment of a genuine issue of material fact.

This question of fact precludes summary judgment and must be addressed to the trier of fact.

## IV. CONCLUSION

Based on the foregoing analysis, the Court has concluded that defendant Oakbrook's motion for summary judgment must be **GRANTED** and defendant Windsor's two motions for summary judgment must be **DENIED**. A partial judgment order to this effect shall issue forthwith.

### PARTIAL JUDGMENT ORDER

In accordance with the Court's memorandum opinion of even date,

**IT IS HEREBY ORDERED** that the motion of defendant Regency Oakbrook, Ltd., for summary judgment is **GRANTED. JUDGMENT** is hereby **AWARDED** in favor of Regency Oakbrook, Ltd., and plaintiff's claim against it is **DISMISSED.**

IT IS **FURTHER ORDERED** that the two motions of defendant Regency Windsor Management Co. for summary judgment are **DENIED.** Plaintiff's claim against Regency Windsor Management Co. will proceed to final pretrial conference and trial as scheduled.