Robert TINKER, Plaintiff–Appellant,

v.

SEARS, ROEBUCK & CO., Defendant–Appellee.

No. 96–1418.

United States Court of Appeals, Sixth Circuit.

Argued June 9, 1997.

Decided Oct. 14, 1997.

E. Michael Morris (argued and briefed), Morris & Doherty, Birmingham, MI, for Appellant.

Brian B. Smith (argued and briefed), Charles C. DeWitt, Jr. (briefed), Dewitt, Balke & Vincent, Detroit, MI, for Appellee.

Before: KEITH, KENNEDY, and MOORE, Circuit Judges.

KEITH, Circuit Judge.

Plaintiff–Appellant Robert Tinker ("Tinker") appeals from the district court's order granting summary judgment for the defen-

dant in this age discrimination action. The district court found that Tinker had failed to prove a prima facie case of age discrimination. The court below also found that Tinker had failed to prove that Defendant–Appellee Sears, Roebuck & Co.'s ("Sears") proffered reason for terminating Tinker's employment was a pretext for age discrimination. For the reasons below, we **REVERSE** in part, **AFFIRM** in part[1], and **REMAND** this case for further proceedings consistent with this opinion.

## I.

Tinker began working in the automotive repair department at the Sears auto center in Livonia, Michigan in June, 1965. He continued to work in that department for 29 years as a technician specializing in brake repair. It is uncontested that Tinker's work was excellent. Tinker was fired on April 25, 1994, which was two days before his fifty-second birthday.

Tinker testified that he understood the correct procedure for brake repair to be as follows. When a mechanic was in need of a project, he would pick up the next work order from the dispatch desk. This order contained the customer's name and address, and stated the problem the customer was experiencing with the vehicle. The mechanic would then obtain an inspection sheet, and inspect the customer's car. He would note the required repairs on the inspection sheet and put it in the envelope containing the work order. The envelope was either placed in a tray marked "for approval," or handed to a salesperson. After the salesperson had discussed the repairs and costs with the customer, and obtained the customer's approval to proceed with the work, he would complete the work order by filling in the required parts and the labor charges. The completed order would either be returned to the mechanic or placed on the dispatch board. After the mechanic completed the work, he was required to write his name or mechanic number on the work order.

On March 9, 1994, Anthony Green, a Sears employee, brought his car into the auto de-

partment for a brake inspection. Tinker testified that a salesperson, Kevin Martin, partially filled out a work order. Tinker then inspected Green's vehicle and returned the work order to Martin. Martin asked Tinker what the labor charge would be, and Tinker replied that he thought it was about $60.00. Green stated that that was a lot of money. Martin instructed Tinker to perform the repair work, and told him that he would complete the work order. Tinker made the repair, gave Martin the car keys, and left for the day.

About one month after this incident, Martin was fired for theft of tires. While investigating this incident, Martin told Sears about the incident with Anthony Green's car. Martin stated that Green paid for the part, and that Tinker did the work for free. Martin stated that he wrote up the work order. At this point, Tinker learned that there was no completed work order for Anthony Green's repairs. He then went to Roger Ramesbottom, the auto center manager, to inform him of the problem with the work order. Tinker turned in a written statement of his version of the Green incident, and categorically denied agreeing to do the repair work for free. Not long after these discussions, Tinker was terminated. Ramesbottom, who fired Tinker, told him that the termination was the result of Tinker's violation of company policy with respect to work orders.

## II.

*A. Standard of Review*

■ The court of appeals reviews a decision to grant summary judgment *de novo*. *Curto v. City of Harper Woods*, 954 F.2d 1237, 1241 (6th Cir.1992). The evidence is viewed in the light most favorable to the non-movant. *Bender v. Southland Corp.*, 749 F.2d 1205, 1210–1211 (6th Cir.1984).

*B. The Prima Facie Case*

■ Tinker alleged that his termination was the result of age discrimination in violation of Michigan's Elliott–Larsen Civil Rights

---

1. No argument was offered in regards to dismissal of the claim for intentional infliction of emo-

tional distress and we affirm the dismissal without comment.

Act ("ELCRA"). His case consisted of circumstantial evidence of age discrimination. A plaintiff who lacks direct evidence of discrimination may still establish a *prima facie* case of discrimination by proving the elements of their cause of action as set out in federal discrimination jurisprudence. *Manzer v. Diamond Shamrock Chemicals Co.*, 29 F.3d 1078, 1081 (6th Cir.1994).

■ To put forth a *prima facie* case of age discrimination, Tinker had to show that "1) he was a member of the protected class; 2) he was discharged; 3) he was qualified for the position; and 4) he was replaced by a younger person." *Matras v. Amoco Oil Co.*, 424 Mich. 675, 683, 385 N.W.2d 586 (1986). Neither party disputes that Tinker has proven elements one through three.

■ Tinker contends that he has also met the fourth element by presenting evidence that he was replaced by a younger person. Tinker relies on the fact that Larry Jordan, a part-time employee who was thirty-one years old at the time of Tinker's termination, was promoted to full-time status after Tinker was fired. Sears responds that Tinker's duties were assumed by the three remaining employees in the department, and that no new employee was hired to replace Tinker. Sears relies on this Court's decision in *Barnes v. GenCorp, Inc.*, 896 F.2d 1457, 1465 (6th Cir.), *cert. denied*, 498 U.S. 878, 111 S.Ct. 211, 112 L.Ed.2d 171 (1990), in which we held that a person is not replaced when another current employee assumes the duties of the terminated employee, or where the terminated employee's work is redistributed among employees already performing related tasks. *Barnes* stated that a person is replaced only when another employee is hired, or reassigned to take on the duties of the terminated employee. *Id.*

Tinker relies on this Court's decision in *Wilkins v. Eaton Corp.*, 790 F.2d 515, 521 (6th Cir.1986), for the proposition that the promotion of Larry Jordan to full-time status constitutes reassignment sufficient to meet the replacement requirement. In *Wilkins*, the plaintiff held the title "Captain Pilot" while employed with the defendant. He was discharged at the age of fifty-one, and sued for age discrimination. This Court held that

the plaintiff had proven replacement where he showed that shortly after he was fired, a twenty-seven year old co-pilot was promoted to the rank of "Captain Pilot." We determined that though the younger pilot was not a new hire, his promotion constituted a reassignment because it presumably required him to perform duties for which he had not been responsible in his prior position.

Tinker also calls this Court's attention to the decision in *EEOC v. Regency Windsor Management, Co.*, 862 F.Supp. 189 (W.D.Mich.1994). In *Regency Windsor*, the plaintiff was sixty-two years old when terminated. On the day the plaintiff was discharged, a twenty-three year old employee was promoted from part-time to full-time status. The district court concluded that this promotion was "sufficiently analogous to replacement by a new younger hire to satisfy the fourth element." *Id.* at 194.

We believe that the district court's analysis in *Regency Windsor* is a logical extension of this Court's opinion in *Wilkins*. That analysis is directly applicable to Tinker's case. By promoting Larry Jordan from part-time to full-time status, Sears effectively replaced Tinker by reassigning another employee to assume Tinker's duties. This type of reassignment is analogous to hiring a new employee to cover the terminated employee's duties. Larry Jordan did not assume Tinker's duties in addition to his own part-time duties. Rather, Sears had to fundamentally change the nature of his employment, by promoting him to full-time status, in order to have him assume Tinker's duties in addition to his own. For that reason, we hold that the district court below erred in determining that Tinker had not proven the fourth element of his *prima facie* case. We find that Tinker has proven all of the elements of his *prima facie* case, and the district court's decision to grant summary judgment based on failure to do so is therefore reversed.

### C. Proof of Pretext

■ As Tinker has proven his *prima facie* case, a presumption has been created that Sears unlawfully discriminated against him on the basis of age. *See Texas Dep't of*

*Community Affairs v. Burdine,* 450 U.S. 248, 254–56, 101 S.Ct. 1089, 1094–95, 67 L.Ed.2d 207 (1981). Thus, the burden shifts to Sears to offer a legitimate, nondiscriminatory reason for its actions. *Id.* Sears has met this burden by alleging that Tinker's termination was the result of his violation of company policy on the preparation of work orders. The articulation of this legitimate reason for his firing shifts the burden back to Tinker, who must prove that the reason proffered by Sears is not the real basis for the termination, but is merely a pretext for discrimination. *Manzer,* 29 F.3d at 1082.

■ In *Manzer,* the Sixth Circuit set forth the three methods by which a plaintiff may meet this burden:

> To make a submissible case on the credibility of his employer's explanation, the plaintiff is 'required to show by a preponderance of the evidence either 1) that the proffered reasons had no basis in fact; 2) that the proffered reasons did not actually motivate his discharge; or 3) that they were insufficient to motivate discharge.'

*Id.* at 1084 (quoting *McNabola v. Chicago Transit Authority,* 10 F.3d 501, 513 (7th Cir.1993)). Tinker has conceded that he cannot utilize the first method because he understood that his act was a violation of company policy. However, Tinker maintains that he has proven that Sears's explanation was pretextual using the second and third methods outlined in *Manzer.*

■ Tinker alleges that his violation of company policy was not the actual reason motivating his discharge. To support this allegation, he presents a collection of statements and acts by various supervisors at Sears. Only one of these groups of statements merits consideration. Tinker alleges that several statements made by various managers illustrate that the reasons given by Sears for his termination are "inconsistent, contradictory and unbelievable." Larry Cassar, the store manager, filed an affidavit that states that he was the decision-maker with respect to Tinker's termination. In his deposition, Cassar testified that he decided to fire Tinker because he had performed work on a customer's car without a work order. He also stated that Tinker never told him that

he had completed a work order, but failed to sign off on it after completing the repair. Cassar further testified that he had no idea whether Tinker had "conspired" with Martin and Green to defraud Sears.

Ramesbottom, the auto department manager, testified that Tinker was fired because he worked on a customer's car without "proper authorization," and without obtaining the follow-up paperwork that would have authorized the work. Ramesbottom stated that Tinker had informed him that a work order for Anthony Green's car had been filled out, but that Tinker had forgotten to sign off on it after completing the repair. Ramesbottom testified that he did not believe Tinker had conspired to defraud Sears.

Michael Fricker, the Sears loss prevention manager, testified that he believed that Tinker deserved to be fired because he suspected him of conspiring to defraud Sears by providing free labor. Fricker stated that he may have recommended that Tinker be terminated to a representative of Sears in the Chicago office.

The inconsistency of this testimony highlights the presence of a material issue of fact. Sears contends that Cassar made the decision to fire Tinker, and that his stated reason for the decision is the only relevant testimony. However, Fricker's statements indicate that he may have played a role in the decision to terminate Tinker's employment, and his reasoning for recommending this action is entirely different from Cassar's. The inconsistency of these statements by the different managers considering the Anthony Green incident, and Tinker's role in that incident, creates two important questions of material fact: who was actually responsible for the decision to fire Tinker, and what was the reason that caused that decision maker to decide that Tinker should be fired? These inconsistencies demonstrate that there is a genuine issue of material fact regarding Sears's proffered reason for Tinker's termination.

Tinker has also raised a second issue of fact relating to the credibility of Sears's statements regarding the cause of his termination. Tinker alleged in the court below

that another, younger, employee, David Burlingame, was not fired even though he had committed the same offense for which Sears alleges it fired Tinker. Sears disputes the validity of this disparate treatment evidence because it fired Burlingame in September 1995, allegedly for the same infraction committed by Tinker. However, Tinker states that Burlingame succeeded in a suit against Sears which alleged that his firing was the result of retaliation for his testimony in Tinker's case. Tinker believes that this information proves that Sears's proffered reason for firing Burlingame is a pretext, and thus, that his evidence of disparate treatment is credible.

Burlingame's ultimate success on the ground that he was fired in retaliation for his testimony supporting Tinker, rather than for his violation of company policy, raises an issue of fact as to whether Tinker and Burlingame were in fact treated differently for the same offense, or if they would have been treated differently absent Burlingame's testimony in the Tinker case. For that reason, this Court is taking judicial notice of the result in the Burlingame case, and the opinion and orders entered in that case. It is of particular import to this Court in reaching this decision that the same district court ruled in the two cases brought by Tinker and Burlingame. The district court made contradictory statements regarding the reason leading to the termination of Burlingame, which indicate that on further review the court below rethought its original position on the issue. In Tinker's case, the district court accepted Sears's argument that Burlingame was fired for failing to comply with company policy on repair paperwork. It stated that Burlingame was fired "for the identical conduct for which it fired [Tinker.]" *Tinker v. Sears, Roebuck & Co.*, No. 94–72901, 1996 WL 426444, at *4 (E.D.Mich. March 14, 1996).

However, in Burlingame's retaliatory discharge case, the court concluded that the fact that Sears became aware of Burlingame's conduct with respect to repair paperwork as early as April 1995, but only took action after Burlingame testified in the Tinker case, "makes it seem 'more likely than not' that

[Sears'] motive in discharging [Burlingame] was one of retaliation." Opinion and Order, *Burlingame v. Sears, Roebuck, Co.*, No. 95–CV–75046 (D. Mich. filed 4/10/96), pgs. 10–11.

We believe that this inconsistency illustrates the existence of a genuine issue of material fact regarding Sears's treatment of Burlingame. It appears that Tinker's allegation of disparate treatment may have more substance that the district court initially believed, and that there is genuine issue of material fact concerning whether Sears treated a younger employee differently than it treated Tinker, or if Sears would have treated the younger employee differently but for his decision to testify in support of Tinker's case.

 Lastly, we agree with the district court's decision that the statistical evidence presented by Tinker does not raise an issue of fact. "For statistics to be valid and helpful in a discrimination case, 'both the methodology and the explanatory power of the statistical analysis must be sufficient to permit an inference of discrimination.'" *Simpson v. Midland–Ross Corp.*, 823 F.2d 937, 944 (6th Cir.1987). A sample which is too small can undermine the probative value of the statistical evidence. *Id.* at 943. Finally, the statistical evidence is rendered suspect when the sample includes persons leaving their employment under incentive programs or to take new jobs. *Id.* Tinker's statistical analysis includes all of these faults. His sample was only 13 employees, some of whom departed employment with Sears under incentive programs. Further, the record contains no information on the methodology utilized by Tinker's expert, nor does it contain the data upon which the expert relied. Thus, we conclude that the district court correctly held that Tinker's statistical evidence failed to raise a material issue of fact regarding pretext.

As we have concluded that Tinker has presented a prima facie case of age discrimination, and has raised questions of material fact with respect to two of the means by which he seeks to prove pretext, we believe that the district court incorrectly granted summary judgment for the defendant. No argument was made on appeal regarding

the dismissal of Tinker's claim of intentional infliction of emotional distress, and we therefore affirm the dismissal of that claim without further comment. Accordingly, we **REVERSE** that part of decision of the district court relating to age discrimination, **AFFIRM** the district court's dismissal of the claim of intentional infliction of emotional distress, and **REMAND** this case for further proceedings consistent with this opinion.