**James C. DEETJEN, Plaintiff,**

v.

**ANCHOR COUPLING,
INC., Defendant.**

No. 2:01–CV–224.

United States District Court,
W.D. Michigan,
Northern Division.

Jan. 14, 2003.

Nino E. Green, Green, Weisse, Rettig, et al., Escanaba.

Lisa M. Bergersen, Lindner & Marsack, S.C., Milwaukee, WI.

Robert E. Schreiber, Jr., Lindner & Marsack, S.C., Milwaukee, WI.

## OPINION

McKEAGUE, District Judge.

This case involves an allegation of age discrimination brought under the Michigan Elliott–Larsen Civil Rights Act, M.C.L. § 37.2202 *et. seq.*, by plaintiff James Deetjen ("plaintiff" or "Deetjen") against defendant Anchor Coupling, Inc. ("defendant" or "Anchor Coupling"). Now before the Court is defendant's motion for summary judgment (dkt.# 12). The Court conducted a hearing on this motion on November 12, 2002. After a thorough review of the pleadings, record, and arguments, the Court finds that defendant's motion for summary judgment will be granted.

## I.  Background

Defendant Anchor Coupling, a subsidiary of Caterpillar, Inc., manufactures and markets hose and coupling assemblies used in the equipment manufacturing industry. Plaintiff James Deetjen worked for defendant and its predecessor companies from 1951 until his termination on November 19, 1999, at age seventy-three.

For the last six years of his employment, plaintiff was the sole quote analyst in the quote department at defendant's manufacturing facility in Menominee, located in the Upper Peninsula of Michigan. As a quote analyst, plaintiff's primary duty was the preparation of price quotations for defendant's customers and potential customers. Price quotations were prepared by gathering the necessary values and cost information from an internal pricing book, then using paper, pencil, and a calculator to manually calculate each quotation.

In 1996, defendant transferred James Dufrane, then thirty-three years old, from the customer service department into the quote department. This move was made because Dufrane's primary duty, print reading, was more closely related to price quotation than to customer service. Print reading is the process of analyzing a customer's product specifications and blueprints and translating them into part numbers and nomenclature that can then be used by the quote analyst to calculate a price quotation. After his transfer, Dufrane supervised Deetjen and was given the title of quote manager.

While plaintiff was never responsible for print *reading,* after Dufrane's transfer to the quote department he was asked to perform print *verification* in addition to his price quotation duties. Print verification involves checking for accuracy the analysis performed by the print reader. Plaintiff still, however, spent sixty to seventy-five percent of his typical workweek preparing price quotations.

From 1997 to 1999, the number of price quotations plaintiff was responsible for calculating increased to the point where plaintiff had difficulty keeping up with demand. In addition, plaintiff made mathematical errors during these manual calculations. During the same time period, and under the leadership of Dufrane, defendant was implementing a longstanding plan to computerize the price quotation process. The new computer system was installed in 1999 and included an estimating and quote management (EQM) module and an Anchor pricing system (APS) module. The EQM and APS modules, when used in conjunction with one another, provided the capability to calculate price quotations by computer rather than manually. Both of these modules were fully implemented and operational as of Monday, November 22, 1999.

On Friday, November 19, 1999, defendant terminated plaintiff by a letter explaining that, as plaintiff already knew, the new computer system was in place and "[t]his change removes the need for a Quote Analyst and therefore your position has been eliminated, effective today." *See* Defendant's Brief in Support of Motion for Summary Judgment at 7. Defendant determined that since the majority of the work performed by the quote analyst would now be performed by the new computer system, the position would be eliminated and Deetjen's remaining duties reassigned to other employees. This left Dufrane as the sole employee in the quote department. After his termination, plaintiff received from the EEOC a right to sue letter and commenced this age discrimination action.

## II. Standard of Review

Under Fed.R.Civ.P. 56, the Court must look beyond the pleadings and evaluate the facts to determine whether there is a genuine issue of material fact that warrants a trial. *Barnhart v. Pickrel, Schaeffer & Ebeling Co.,* 12 F.3d 1382, 1388–89 (6th Cir.1993). An issue of fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The Court must draw all reasonable inferences in the light most favorable to the nonmovant. *Timmer v. Michigan Dep't of Commerce,* 104 F.3d 833, 842 (6th Cir. 1997). Production of a "mere scintilla of evidence" in support of an essential element will not forestall summary judgment. *Anderson,* 477 U.S. at 251, 106 S.Ct. 2505. A party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Ind. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

In discrimination cases such as this, "[t]he bottom line is that there must always be evidence upon which reasonable minds could conclude that discrimination was the true motive for the decision." *Lytle v. Malady,* 456 Mich. 1, 33, 566 N.W.2d 582 (1997).

## III. Analysis

■ Plaintiff brings an age discrimination claim under the Michigan Elliott–Larsen Civil Rights Act, M.C.L. § § 37.2202 *et. seq.,* which prohibits employers from discriminating with respect to an individual's terms, conditions, or privileges of employment on the basis of age. *See* M.C.L. § § 37.2202(1)(a). Plaintiffs under the Elliot–Larsen Act must prove that the "prohibited discriminatory treatment by the employer was a determining factor used in its decision to discharge." *Lytle v. Malady,* 456 Mich. 1, 28, 566 N.W.2d 582, (1997). Elliot–Larsen Act cases proceed under the *McDonnell Douglas* burden-shifting framework used in claims brought under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 623 *et seq.:*

> 1) First, the plaintiff must show a prima facie case of age discrimination, which gives rise to a presumption of discrimination;
>
> 2) Then, the burden shifts to the defendant to demonstrate a legitimate, nondiscriminatory reason for the adverse employment action;
>
> 3) Finally, if the employer satisfies this burden, the plaintiff must then show that the proferred reason was a pretext for discrimination.

*See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *see also Cicero v. Borg–Warner Automotive, Inc.,* 280 F.3d 579, 584 (6th Cir.2002) ("The United States Supreme Court case *McDonnell Douglas Corp. v. Green* provides the standard by which to

analyze a discrimination claim under the Elliot–Larsen Act.").

### A. Prima Facie Case

■ Turning to the first *McDonnell Douglas* factor, to establish a prima facie case of age discrimination plaintiff must show that he:

1) was a member of a protected class;

2) was qualified for his job;

3) suffered an adverse employment action; and

4) was replaced by a younger person

*Cicero,* 280 F.3d 579, 582–83 (6th Cir.2002). At issue in this case is whether plaintiff was replaced by a younger person.

Plaintiff claims that defendant replaced him with Dufrane, a younger employee who allegedly now does the work that formerly was Deetjen's. Defendant, on the other hand, argues that plaintiff's position was eliminated for business reasons as part of a valid reduction in force (RIF). The Sixth Circuit has recently reiterated that "determining whether a discharged employee is 'replaced' is the key to deciding if the company has engaged in a valid reduction in force." *Godfredson,* 173 F.3d at 372. The Court noted:

> A workforce reduction situation occurs when business considerations cause an employer to eliminate one or more positions within the company. An employee is not eliminated as part of a workforce reduction when he or she is replaced after his or her discharge. However, *a person is not replaced when another employee is assigned to perform the plaintiff's duties in addition to other duties, or when the work is redistributed among other existing employees already performing related work.* A person is replaced only when another employee is hired or reassigned to perform the plaintiff's duties.

*Godfredson v. Hess & Clark,* 173 F.3d 365, 372 (6th Cir.1999)(emphasis in original),

citing *Barnes v. GenCorp, Inc.,* 896 F.2d 1457, 1465 (6th Cir.1990).

*Godfredson* further clarified that a terminated employee is not replaced when the existing employees who assumed his or her duties "maintained their prior job titles and responsibilities" and performed their new duties "in addition to [their] other duties." *Godfredson,* 173 F.3d at 373 (rejecting the plaintiff's age discrimination claim under the ADEA and finding that the defendant engaged in a valid RIF).

■ A terminated employee is replaced by an existing employee, however, when the employer "fundamentally change[s]" the nature of that employee's employment in order to have him assume duties in addition to his own. *Tinker v. Sears, Roebuck & Co.,* 127 F.3d 519, 522 (6th Cir.1997)(finding that a terminated employee was replaced when an existing employee was promoted from part-time to full-time in order to assume additional duties). As explained in *Tinker,* promoting an existing employee is a fundamental change that is "analogous to hiring a new employee to cover the terminated employee's duties." *Id.*

In this case, plaintiff does not contend that defendant hired a new employee to replace him, nor does he argue that defendant "fundamentally changed" an existing employee's employment. Rather, plaintiff argues that he was replaced by Dufrane, who defendant reassigned to perform all of Deetjen's duties. The record, however, particularly when viewed in light of *Godfredson* and *Tinker,* does not support plaintiff's assertion and reveals instead that defendant engaged in a genuine RIF. To begin, Dufrane's duties as quote manager before Deetjen's termination included print reading, supervising the computerization of the quotation process, sales forecasting, coordinating defendant's ISO9000 certification, and maintaining defendant's

station list.[1] Deetjen's duties as quote analyst, on the other hand, included preparing price quotes and performing print verification. In addition, both Dufrane and Deetjen performed various clerical duties within the quote department.

Following Deetjen's termination on November 19, 1999, the bulk of plaintiff's duties were reassigned to the new computer system, which began calculating all price quotes for defendant on November 22, 1999. Uncontroverted evidence indicates that plaintiff's remaining duties were reassigned to Dufrane and other employees, all of whom performed them in addition to their existing duties. For example, the record before the Court reveals that the only change in Dufrane's duties was the addition of some of Deetjen's clerical functions within the quote department. Just as in *Godfredson,* Dufrane retained his prior job title and responsibilities and assumed these clerical duties in addition to his other duties. *See Godfredson,* 173 F.3d at 373.

Furthermore, plaintiff's reliance on Dufrane's testimony that "100 percent" of his working time after Deetjen's termination was used to "provide timely and accurate price quotes to Anchor customers and potential customers" is misplaced. *See* Dufrane dep. at 42. This would be the general objective of every member of the quote department, particularly the quote manager, and does not imply that Dufrane was "hired or reassigned to perform the plaintiff's duties." *See Godfredson,* 173 F.3d at 372.

Finally, while plaintiff does not explicitly assert it, the record also refutes the argument that defendant replaced him with Pat Sievert. Following Deetjen's termination, defendant reassigned his print verification duties to Sievert, whose existing duties as accounts receivable and credit collections manager included supervising the accounts payable clerk, clearing up past due customer accounts, processing daily cash receipts, and assisting with payroll. Sievert, as Dufrane, retained her prior job responsibilities and title and performed plaintiff's print verification duties in addition to her own.

Based on the foregoing analysis, it is evident that plaintiff's duties as quote analyst were reassigned to the new computer system and to Dufrane and Sievert, who performed them in addition to their existing duties. Given this, the Court finds that plaintiff was not replaced, but rather was terminated by defendant as part of a genuine RIF.

■■■ To establish a prima facie case of age discrimination where, as here, the termination occurred as part of a genuine RIF, plaintiff need not plead the fourth prong of the prima facie test because plaintiff is not actually replaced. *See Godfredson,* 173 F.3d at 371. Instead, the plaintiff must present "additional direct, circumstantial, or statistical evidence tending to indicate that the employer singled out [the plaintiff] for discharge for impermissible reasons." *Id.,quoting Barnes v. GenCorp, Inc.,* 896 F.2d 1457, 1465 (6th Cir.1990). Plaintiff has presented no such evidence, however, nor can any readily be discerned from the record before the Court.

While the Court is not unsympathetic to plaintiff, "if [he] was truly singled out for discharge because of age he [ ] should be able to develop enough evidence through the discovery process or otherwise to establish a prima facie case." *See Barnes,* 896 F.2d at 1465–66. Given that plaintiff has not done so, and that he was terminated as part of a genuine RIF, the Court finds that he has failed to establish a pri-

---

**1.** A station list is a database of sources, prices, part numbers, and revisions.

ma facie case of age discrimination under the Elliott–Larsen Act and that defendant's motion for summary judgment will be granted.

### B. Evidence of Pretext

■ Even if plaintiff had established a prima facie case of age discrimination, however, it would still be incumbent upon him to show that defendant's proferred reason for the termination—the reduction in force—was pretextual. *See Godfredson,* 173 F.3d at 373. Plaintiff may make such a showing "by offering evidence that the employer's proferred reason had no basis in fact, did not actually motivate its decision, or was never used in the past to discharge an employee." *Smith v. Chrysler Corp.,* 155 F.3d 799, 805–06 (6th Cir. 1998). In this case, plaintiff has brought forward two pieces of evidence to demonstrate that defendant's proferred reason for his termination was pretextual.

Plaintiff first alleges that in 1996 his former supervisor, Gail Clark, told him that Dufrane would be assuming his responsibilities, that he would be reporting to a different supervisor, and that he would have to justify his salary from that point on. Plaintiff further alleges that in August 1998 a subsequent supervisor, Craig Coldwell, asked him for planning purposes how long he planned to continue working for defendant.

The Sixth Circuit has noted that in age discrimination cases, statements allegedly showing bias on the part of the employer are to be evaluated with reference to the following factors:

(1) whether the statements were made by a decision-maker or an agent within the scope of his employment;

(2) whether the statements were related to the decision-making process;

(3) whether the statements were more than merely vague, ambiguous or isolated remarks; and

(4) whether they were made proximate in time to the termination

*Peters v. Lincoln Elec. Co.,* 285 F.3d 456, 477–78 (6th Cir.2002). None of these factors is individually dispositive, rather they must be examined as a whole. *See id.* at 478.

Applying these factors to the evidence offered by plaintiff, even if plaintiff's allegations regarding Gail Clark's and Craig Coldwell's statements are true, they do not support an inference of discrimination. First, neither Clark nor Coldwell were the ultimate decision-maker at Anchor Coupling, as general manager Mike Warnken actually made the decision to terminate plaintiff. *See Smith v. Leggett Wire Co.,* 220 F.3d 752, 759 (6th Cir.2000). Furthermore, there is no evidence that either Clark's or Coldwell's comments were either related to or even considered in Warnken's decision. Third, while the alleged comments were neither vague nor ambiguous, the record reflects that they were isolated occurrences, unrelated to any "deep-rooted, ongoing pattern" of discriminatory comments. *See Cooley v. Carmike Cinemas, Inc.,* 25 F.3d 1325, 1331 (6th Cir.1994). Finally, and perhaps most telling, Clark's comments came almost four years before and Coldwell's almost eighteen months before Deetjen was ultimately terminated.

Considering the analysis above, it is evident on the record before the Court neither Clark's nor Coldwell's comments can serve as an inference of age discrimination. Having failed to carry this burden, even if plaintiff had established a prima facie case of age discrimination his claim could not survive defendant's motion for summary judgment.

### IV. Conclusion

For the reasons set forth above, defendant's motion for summary judgment will

be granted and this matter dismissed. The Court will enter an order consistent with this opinion.

## JUDGMENT ORDER

In accordance with the Court's opinion of even date,

NOW, THEREFORE, **IT IS OR-DERED** that defendant's motion for summary judgment (dkt.# 12) is **GRANTED** and this matter is **DISMISSED**.