NOT RECOMMENDED FOR PUBLICATION
File Name: 04a0117n.06
Filed: November 19, 2004

No. 03-1834

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT


THOMAS C. SCHUCH,
    Plaintiff-Appellant,

v.

SAVAIR, INC.,                        ON APPEAL FROM THE UNITED
    Defendant-Appellee.          STATES DISTRICT COURT FOR THE
                                          EASTERN DISTRICT OF MICHIGAN

                                             /


BEFORE: SUHRHEINRICH and CLAY, Circuit Judges; NIXON, District Judge. [*]

    **CLAY, Circuit Judge.** Plaintiff, Thomas C. Schuch, appeals the district court's order granting summary judgment to Defendant, Savair, Incorporated, on claims brought pursuant to the Age Discrimination in Employment Act, 29 U.S.C. § 631 *et seq.* Plaintiff contends that the district court erred in concluding that he failed to produce direct evidence of age discrimination; that he failed to establish a *prima facie* case of age discrimination; that he was terminated as part of a reduction in force; that he was not replaced by a younger employee; and that he failed to produce probative statistical evidence of age discrimination. For the reasons that follow, we **AFFIRM** the order of the district court.

**BACKGROUND**

---

[*]The Honorable John T. Nixon, United States District Judge for the Middle District of Tennessee, sitting by designation.

1

Defendant, Savair, Inc. ("Savair") is a Michigan corporation that manufactures automated welding guns for the automotive industry. Plaintiff, Thomas Schuch ("Schuch"), was hired by Savair as a "saw boy" in 1983. He worked his way up through various jobs at Savair and, in 1985, was promoted to Inspector in Savair's In-Process Inspection Department. Two years later, Schuch was again promoted, this time to the position of Supervisor of the In-Process Inspection Department. In addition to his new supervisory responsibilities, Schuch carried on his prior duties as Inspector.

Although a November 2000 performance evaluation of Schuch indicated that he was at the "top of his class" as an inspector, it also revealed that Schuch "need[ed] improvement" in managing people, handling conflict resolution, and leadership skills.

During the same period, Savair was experiencing significant financial difficulty. The company lost $592,000 in 2000, and $4,655,434 in 2001. In May 2001, Savair hired a new president, Richard Borst ("Borst") and a new director of manufacturing, Kim Fuga ("Fuga"). Fuga determined Savair could cut costs by eliminating the positions of several employees, including some supervisors, and by reducing the pay of some employees. Several Savair employees were laid off on September 7, 2001. According to Schuch, he was promised that no more layoffs would be made following that date. Nonetheless, Savair terminated Schuch's employment on September 28, 2001.

At the time of his termination, Schuch was fifty-nine years old and earning an annual salary of $60,000. The other two inspectors in his department (who, unlike Schuch, held positions that were neither salaried nor supervisory), ages twenty-two and forty-nine, were not laid off. On October 1, 2001, Savair hired Don Maley ("Maley"), thirty-seven, for a non-supervisory inspector position. Maley was hired at an hourly rate of nineteen dollars per hour. Unlike Schuch, Maley had

2

training on the FARO arm machine, a costly and sophisticated electronic inspection device which was sitting unused.

In his deposition, Fuga testified that Schuch's position was eliminated in order to reduce costs. Fuga stated that Schuch was not retained as an inspector with a reduction in pay because of his performance, explaining that Schuch "didn't work well with others around him. He wasn't open for new ideas as far as new ways to inspect. . . . He wasn't open for change. And he was set in his ways. And his way was the only way to do something." Michael Koltuniak, plant manager at Savair, explained that he did not consider shifting Schuch from a salaried to an hourly position because "the decision [to terminate Schuch] was made based on not only cost, but on like a cultural change going from an older way of doing inspection to moving into coordinate measuring machines," like the FARO arm machine.

On April 15, 2002, Schuch filed a claim for discrimination against Savair with the United States Equal Employment Opportunity Commission ("EEOC") and the Michigan Department of Civil Rights. On May 16, 2002, Schuch requested and was issued a "Right to Sue" letter by the EEOC. Schuch filed a complaint in the United States District Court for the Eastern District of Michigan on May 22, 2002, alleging age discrimination in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 1981 and Michigan's Elliott-Larsen Civil Rights Act, MICH. COMP. LAWS § 37.2101, *et al.* [1]

Following the completion of discovery, Savair filed a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56(c) on January 31, 2003. In his responsive brief to

---

[1]Although Schuch alleged violations of both federal and state discrimination laws in his complaint, his state law claim pursuant to the Elliott-Larsen Civil Rights Act was not briefed on appeal and it appears he has abandoned his Elliott-Larsen claim.

that motion, Schuch sought leave to amend his complaint to allege age discrimination under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 631 *et seq.*, having inadvertently brought his claim pursuant to Title VII, under which age is not a protected class.

On April 8, 2003, the district court heard arguments. One day later, the district court issued a written opinion granting Schuch's motion seeking leave to amend his complaint and Savair's motion for summary judgment. The district court rejected the evidence offered by Schuch as direct evidence, finding that "there were no comments made about Plaintiff's age." The district court also found that Schuch was not replaced by a younger worker. Finally, the district court found that this was a reduction in force case, requiring Schuch to present additional direct, circumstantial, or statistical evidence, and that Schuch had failed to do so.

Schuch then filed a motion for reconsideration, which was denied on June 3, 2003. Schuch's notice of appeal to this Court followed on June 30, 2003.

## DISCUSSION

### I. Standard of Review

We review a district court's grant of summary judgment *de novo*. *Hamby v. Neel*, 368 F.3d 549, 556 (6th Cir. 2004)(citing *Johnson v. Econ. Dev. Corp.*, 241 F.3d 501, 509 (6th Cir. 2001)). Summary judgment is appropriate when there are no genuine issues of material fact. *Id.*; FED. R. CIV. P. 56(c). In reviewing the district court's grant of summary judgment, we view the evidence and draw all reasonable inferences in the light most favorable to the non-moving party. *Combs v. Int'l Ins. Co.*, 354 F.3d 568, 576-77 (6th Cir. 2004)(citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Williams v. Int'l Paper Co.*, 227 F.3d 706, 710 (6th Cir. 2000); *Smith v. Thornburg*,

136 F.3d 1070, 1074 (6th Cir. 1998)).  However, the " mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

## II.    Legal Framework

Under the ADEA, it is unlawful for employers to "fail or refuse to hire or to discharge any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age."  29 U.S.C. § 623(a)(1).  There are two different ways in which a plaintiff may establish an age discrimination case.  *Rowan v. Lockheed Martin Energy Systems*, 360 F.3d 544, 547 (2004).

First, a plaintiff may present direct evidence of discrimination.  "Direct evidence is evidence that proves the existence of a fact without requiring any inferences."  *Id.* at 548.  Once a plaintiff presents direct evidence of an employer's improper motive, "the burden shifts to the employer to prove by a preponderance of the evidence that it would have made the same decision absent the impermissible motive."  *DiCarlo v. Potter*,  358 F.3d 408, 415 (6th Cir. 2004)(quoting *Weigel v. Baptist Hosp. of E. Tenn.,* 302 F.3d 367, 382 (6th Cir.2002)).

A plaintiff who does not present direct evidence  may establish a *prima facie* case of age discrimination under the *McDonnell-Douglas* burden-shifting analysis.  *Rowan*, 360 F.3d at 547. A *prima facie* case of discriminatory discharge is established when a plaintiff demonstrates that (1) he is a member of a protected age class; (2) he was discharged; (3) he was qualified for the position he held; and (4) he was replaced by a younger worker. *Id.* (citing *Cox v. DOT*, 53 F.3d 146, 150 (6th Cir. 1995)).  Once a *prima facie* case is established, the burden shifts to the defendant to present a

legitimate, non-discriminatory reason for the termination. If the defendant does so, the burden shifts back to the plaintiff to establish that the proffered non-discriminatory reason is pretextual. Summary judgment in favor of the defendant is appropriate only where no reasonable jury could conclude that the proffered explanation was a pretext for discrimination. *Id.* at 547-48.

A further wrinkle exists where a defendant employer can show a "reduction in force": that "business considerations cause[ed] [the] employer to eliminate one or more positions within the company." *Barnes v. GenCorp, Inc.*, 896 F.2d 1457, 1465 (6th Cir. 1990). In a reduction in force ("RIF") case, the fourth prong of the *McDonnell Douglas* paradigm is modified. A plaintiff in an RIF case need not show that she was replaced by a younger worker, but instead must present "additional direct, circumstantial, or statistical evidence tending to indicate that the employer singled [her] out . . . for discharge for impermissible reasons." *Id.*

## III. Direct Evidence of Age Discrimination

Schuch argues that the district court erred in finding that comments made by two Savair managers did not constitute direct evidence of age discrimination. Specifically, Schuch contends that Fuga's statements that Schuch "wasn't open for new ideas," "wasn't open for change" and "was set in his ways," and Koltuniak's reference to "a cultural change going from an older way of doing inspection to moving into coordinate measuring machines," demonstrate that Schuch was terminated, at least in part, because of a negative perception of his attitude and abilities that was based on stereotypes about his age.

We do not agree with Schuch's contention that Fuga and Koltuniak's statements are direct evidence of age discrimination. The statements referenced above are too ambiguous to constitute direct evidence of age discrimination. In order for evidence to be considered direct, the factfinder,

6

without drawing any inferences, must be able to conclude that an employee's termination was motivated, at least in part, by discriminatory animus. Such a conclusion is impossible in this case without taking a significant inferential leap. The district court was correct in finding that Schuch had not presented direct evidence of age discrimination.

## IV.    *Prima Facie* Case

Schuch contends that, in determining that he failed to establish a *prima facie* case of age discrimination, the district court erred in several respects, specifically: in finding that Schuch was not replaced by a younger worker; in finding that this was a RIF case; and in finding that Schuch failed to present probative statistical evidence of age discrimination.

### 1.  Was Plaintiff replaced by a younger worker, or is this a true reduction in force case?

Schuch argues that the district court erred in determining that he was not replaced by a younger worker and that this was not a RIF case. If Schuch is correct on the issue of replacement by a younger worker, we must necessarily conclude that this case does not involve a reduction in force. As we have held, "an employee is not eliminated as part of a work force reduction when he or she is replaced after his or her discharge." *Barnes*, 896 F.2d at 1465.

Schuch contends that Savair replaced him with Maley, who was hired three days after Schuch's termination. However, Maley was not hired to fill Schuch's position. His duties did not include any of Schuch's supervisory obligations, and, as the district court noted, he was responsible for operating the FARO arm machine, which Schuch did not know how to use. We agree with the district court that Schuch was not replaced by Maley.

7

We also agree with the district court that this is a true reduction in force case. Savair presented un-rebutted evidence that, pursuant to a cost reduction plan, five "indirect labor" positions (including Schuch's) and nine "direct labor" positions were eliminated in September 2001. This evidence establishes that that "business considerations cause[ed]" Savair "to eliminate one or more positions within [the] company." *Id.*

## 2. Has Plaintiff presented sufficient additional evidence of discrimination?

As explained above, because this is a reduction in force case, Schuch must offer additional direct, circumstantial, or statistical evidence that Savair terminated his employment for impermissible reasons. This requirement replaces the fourth prong of the *McDonnell Douglas* framework for establishing a *prima facie* case of discrimination, which ordinarily would require Schuch to prove that he was replaced by a younger worker.

Schuch contends that he has presented sufficient statistical evidence to satisfy the modified fourth prong of the *prima facie* analysis. We note that this evidence has taken various forms throughout this litigation. First, in Plaintiff's brief opposing Defendant's motion for summary judgment, Schuch alleged that at the time Borst, Fuga, and Koltuniak were hired in May 2001, there were thirteen people in management or supervisory positions at Savair, eight of whom were over the age of fifty. Schuch further claimed that all eight of these managers or supervisors were either removed from their managerial/supervisory positions or laid off by the end of September 2001, whereas every manager or supervisor under the age of fifty was retained. The district court found these "statistics" unreliable because two of the eight employees over fifty were not laid off or removed but instead resigned, and because there was no showing that the thirteen employees shared similar qualifications.

8

Before this Court, Schuch has offered two more sets of "statistics." In Plaintiff's brief, it is alleged that were eleven people in managerial or supervisory positions in May 2001, seven of whom were over the age of fifty, and that seven people had been removed from their managerial/supervisory positions by September 2001, all of whom were over age fifty.[2] Two of the people listed as removed from their positions are President Richard Schmidt and Vice-President Richard Chambers; however, the district court credited evidence presented by Savair that Chambers resigned in December 2000 and that Schmidt resigned in June 2001, and no evidence to the contrary was ever offered by Schuch.

Finally, Schuch presents an even smaller statistical sample in his reply brief, listing seven supervisors employed by Savair prior to September 25, 2001, five of whom were over the age of fifty. According to Schuch, all five of these employees were removed from supervisory positions or laid off by September 25, 2001, while both of the under-fifty employees (each age forty-one) remained as a supervisor.

While we recognize that this evidence is far from convincing statistical proof of discrimination, we do not agree with the district court that it is insufficient to satisfy the modified fourth prong of the *McDonnell-Douglas* test. Savair relies on two decisions of this Court, *Simpson v. Midland-Ross Corp.*, 823 F.2d 937 (6th Cir. 1987) and *Tinker v. Sears, Roebuck, & Co.*, 127 F.3d 519 (6th Cir. 1997), in support of the contention that Schuch's statistical evidence is too unreliable to make out a *prima facie* case of discrimination.

---

[2]A comparison of the list of the seven people over fifty in supervisory/managerial roles in May 2001 with the list of the seven people over fifty removed from supervisory/managerial positions reveals a disparity: a name on the first list is not accounted for on the second, and vice versa.

In *Simpson*, we held that for statistics to be valid in a discrimination case, "'both the methodology and the explanatory power of the statistical analysis must be sufficient to permit an inference of discrimination'" (quoting *Segar v. Smith*, 738 F.2d 1249, 1274 (D.C. Cir. 1984)). 823 F.2d at 944. In *Tinker*, we noted that "a sample which is too small can undermine the probative value of the statistical evidence" (citing *Simpson*, 823 F.2d at 943) and that "statistical evidence is rendered suspect when the sample includes persons leaving their employment under incentive programs or to take new jobs." 127 F.3d at 524.

Savair correctly observes that many of the potential problems with statistical evidence noted by this Court in *Simpson* and *Tinker* are present here: the three sample sizes of thirteen, eleven, and seven employees are all small; there is no explanation of the methodology of the statistical analysis; and the sample includes people who left voluntarily (although it is not clear from the record whether that was either under incentive programs or to take new jobs).

However, we hasten to point out that in neither of those cases was the statistical evidence analyzed in the context of an effort to make out a *prima facie* case. In *Tinker*, the court held that the plaintiff's statistics failed to raise a material issue of fact regarding pretext. 127 F.3d at 524. In *Simpson*, the court concluded that the plaintiff's "statistical evidence, *even if arguably supporting an inference of discrimination to establish a prima facie case*, has insufficient probative value to support a jury verdict on the ultimate question of discrimination." 823 F.2d at 943 (emphasis added). *Simpson*, then, makes clear that the showing required to make out a *prima facie* case is less than that required to support a jury verdict.

While we acknowledge that Schuch's "statistical" evidence is flawed, we note that the requirement under the *McDonnell Douglas* scheme is that he show additional direct, circumstantial,

10

*or* statistical evidence. It is our view that the evidence presented by Schuch is at least sufficient circumstantial evidence to satisfy the fourth prong of the *McDonnell Douglas* test and to make out a *prima facie* case.

**V.      Has Plaintiff Established that Defendant's Proffered Legitimate, Non-discriminatory Reason for Plaintiff's Discharge is Pretextual?**

Because Schuch established a *prima facie* case of age discrimination, the burden shifts to Savair to present a legitimate, non-discriminatory reason for Schuch's termination. *Rowan*, 360 F.3d at 547. We find that Savair has done so by presenting evidence that Schuch's position was eliminated as part of a cost-saving reorganization effort.

The burden therefore shifts back to Schuch to establish that Savair's proffered non-discriminatory reason is pretextual. *Id.* This burden is met if Schuch establishes that the proffered reason: 1) had no basis in fact; 2) was not the actual reason; or 3) was insufficient to explain Savair's actions. *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 573 (6th Cir. 2000)(citing *Wheeler v. McKinley Enters.* 937 F.2d 1158, 1162 (6th Cir. 1991)).

Plaintiff first contends it is untrue that Schuch was terminated as a cost-saving measure because Savair could have cut costs by reducing his salary rather than by terminating his employment. We do not agree that this makes Savair's proffered reason "false," as Schuch argues: Savair might have chosen to reduce costs in a number of different ways, but that does not establish that a cost-reduction effort was not the actual reason for Schuch's termination.

This argument leads to Schuch's next claim of pretext: that Savair's explanation for why Schuch was terminated, rather than hired for the new non-supervisory inspector position filled by Maley, is also pretextual. Savair has presented evidence that Maley was hired rather than Schuch

11

because he had training in the use of the FARO arm machine, because of Schuch's higher compensation, and because of what Savair perceived as problems with Schuch's attitude and performance.

In his brief, Schuch makes much of the fact that Savair claimed to have hired Maley instead of Schuch because of his "experience" with the FARO arm machine; Schuch points out that Maley had been trained to use the FARO arm machine but did not have experience operating it. Savair's brief in support of its motion for summary judgment states that Maley "had extensive training and work experience with the FARO Arm and similar coordinate measuring machines." (Joint Appendix at 56). Schuch is correct that this misrepresents the evidence, which showed that Maley had several years experience with coordinate measuring machines and recent training on the FARO arm machine, but no work experience on the FARO arm machine. Nonetheless, we find this inconsistency insufficient to establish pretext, as it has some basis in fact and does not genuinely undermine Savair's claim that Maley was hired because he could operate the FARO arm machine.

Finally, Savair's brief in support of its motion for summary judgment cites concerns about Schuch's attitude and past disciplinary problems as another reason that he was discharged rather than reassigned. Specifically, Savair cited two incidents, one in January 2000 in which Schuch skipped a management meeting and one in August 2000 in which Schuch was insubordinate to Gary Cronn, one of his supervisors, and shouted an obscenity at him. Schuch does not argue that these incidents did not occur, but rather that he was not the subject of discipline in the fifteen years preceding these episodes or in the following thirteen months prior to his termination. We find that Schuch has not established that Savair's reference to his attitude and disciplinary problems has no basis in fact, is not the actual reason for his termination, or (when coupled with the other legitimate,

12

non-discriminatory reasons for his discharge discussed above) is insufficient to explain Savair's actions. Schuch has failed to establish that Savair's proffered non-discriminatory reasons for Schuch's termination are pretextual, and we conclude that summary judgment in favor of Savair was appropriate.

## CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court's grant of summary judgment to Defendant.