NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 05a0870n.06
Filed: October 25, 2005

Case No. 04-4203

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| JUDITH HERBICK, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE NORTHERN |
| SALEM CITY SCHOOL DISTRICT | ) | DISTRICT OF OHIO |
| BOARD OF EDUCATION, | ) | |
| | ) | |
| Defendant-Appellee. | ) | |
| | ) | |
| | ) | |
| _____ | ) | |

BEFORE: GUY, BATCHELDER, and GILMAN, Circuit Judges.

**ALICE M. BATCHELDER, Circuit Judge.** Plaintiff-Appellant Judith Herbick appeals the district court's grant of summary judgment in favor of Defendant-Appellee Salem City School District Board of Education ("the Board") on Herbick's claims of promissory estoppel and age discrimination in violation of the Age Discrimination in Employment Act ("ADEA") and Ohio law.[1] Because we find that Herbick cannot show that the Board's stated reasons for not re-hiring her were pretextual, and no genuine issue of material fact precludes judgment as a matter of law on her promissory estoppel claim, we AFFIRM the judgment of the district court.

**I. Factual and Procedural Background**

---

[1]Herbick's first amended complaint also listed violations of Title VII of the Civil Rights act of 1964, Ohio public policy, and breach of contract. The district court dismissed those claims at the summary judgment stage, and Herbick does not appeal those adverse determinations.

Herbick retired as a teacher from the Youngstown City School District in 1998 and was sixty years of age throughout the time period relevant to this case. After her retirement, the Board hired her as a part-time teacher of gifted and remedial students and assigned her to the St. Paul Catholic School for the 1998-1999 school year.[2] The initial contract was for a one-year term that expired at the end of the school year. The Board re-hired Herbick for the 1999-2000 school year and again for the 2000-2001 school year. However, in the spring of 2002 the Board voted not to renew Herbick's contract, and did not re-hire her for the 2002-2003 school year, deciding instead to combine her part-time position at St. Paul with a similar part-time position at Reilly Elementary School, creating one full-time position. The Board notified Herbick by letter dated April 22, 2002, that it had voted on April 15, 2002, not to re-hire her.

Although Herbick had not been re-hired, Ted Cougras, the school district's Director of Business and Finance, erroneously sent her a salary notice around the first of July, stating that she would receive an hourly rate of $32.15, which would be in effect from July 1, 2002, through June 30, 2003. In previous years Herbick had never received either a written contract or this kind of salary notice from Cougras or the Board, but she nonetheless claimed that this notice constituted a contract for employment for the upcoming school year and that, relying on it, she purchased supplies and readied her old classroom for the new school year on August 20, 2002.

Meanwhile, the new combined position remained officially unfilled. Because of a lack of kindergarten enrollment, the Board needed to reassign one of its kindergarten teachers; accordingly, Paula Wonner, a kindergarten teacher, was offered the new St. Paul/Reilly position. Wonner did not accept the job and instead opted to participate in the school district "bid bowl," in which teachers

[2]The Board provided gifted and talented teachers to private schools within the school district pursuant to the requirements of Title I of the Elementary and Secondary Education Act of 1965, 20 U.S.C. § 2701, *et seq.*

who are part of the collective bargaining unit are allowed to bid for open jobs within the district. At the bid bowl, Moira Lutsch, a 58-year-old first-grade teacher, bid on the new full-time St. Paul/Reilly job. Wonner then bid on Lutsch's old job. Lutsch apparently had a change of heart about half an hour after bidding on the job and retracted her bid, instead taking a job within the district at Buckeye Elementary School. Herbick could not participate in the bid bowl because she was not a member of the collective bargaining unit.

Whether Lutsch was ever awarded the job—rather than simply having bid on it—is unclear; the only mention of it appears in the deposition testimony of Dr. Brobeck, the district superintendent, who stated that Lutsch "was under contract. She was in the position for about 30 minutes." In any event, Lutsch's retraction left the new position open at the end of the bid bowl.

Mrs. Hammer, the St. Paul principal, called Herbick on August 21, 2002, and questioned whether Herbick had in fact been re-hired for the upcoming school year. Herbick called her supervisor, Steve Stewart, told him that she had a contract (referring to the erroneously sent salary notice), and took the salary notice to him to examine. Stewart checked into the matter and informed Herbick later that day that she did not have the job. That same day, Cougras sent her a letter apologizing for erroneously sending her the salary notification earlier in the summer. The next day, although she knew that her former position had been merged into a full-time position, Herbick contacted Dr. Brobeck to tell him that she needed the work badly and that she wanted to work two days a week.

After the bid bowl, the Board hired Lisa Sainato, a teacher in her mid-twenties from outside the collective bargaining unit, to fill the still-vacant St. Paul/Reilly position. Dr. Brobeck testified that the district did not consider Herbick for the position because on April 15, 2005, the Board had

not renewed her contract, Herbick did not request a Letter of Circumstance after her contract was not renewed, and because Herbick never indicated any interest in the full-time position and only expressed an interest in continued part-time work. Herbick, however, contended that she always expressed an interest in the new position and that the Board did not consider her for the full-time position because of her age.

The Board could not make contracts with part-time or auxiliary employees for more than one year and it often non-renewed employees who were on one-year contracts because of uncertainty as to allocation of funds for the upcoming school year. Herbick had been non-renewed in previous years, but once budget issues were straightened out during the summer, the Board had asked her to teach again for the upcoming school year. However, in the summer of 2002, the Board became aware that at least one member of the collective bargaining unit was in need of reassignment, so the Board did not contact Herbick to re-hire her for the new full-time position.

Herbick filed her complaint against the Board on September 15, 2003, and filed an amended complaint on December 30, 2003, arguing that the Board refused to hire her for the combined position because of her age and because of her participation in an activity protected by Title VII, and alleging that the erroneously sent notice constituted a contract for employment or that, because she had reasonably relied on the notice to her detriment, the notice was a promise of employment that the Board was estopped to retract. The district court granted the Board's motion for summary judgment on all claims on August 30, 2004. Herbick then filed this appeal, alleging error on the part of the district court in dismissing the ADEA and state-law age discrimination claims and the promissory estoppel claim.

## II. Standard of Review

4

We review a district court's grant of summary judgment de novo, using the same standard under Rule 56(c) used by the district court, *Williams v. Mehra*, 186 F.3d 685, 689 (6th Cir. 1999) (en banc), and we consider the record as it stood before the district court at the time of its ruling. *Niecko v. Emor Mktg. Co.*, 973 F.2d 1296, 1303 (6th Cir. 1992). Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). We view the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

To withstand summary judgment, the non-movant must present sufficient evidence to create a genuine issue of material fact. *Klepper v. First Am. Bank*, 916 F.2d 337, 342 (6th Cir. 1990). A mere scintilla of evidence is insufficient; "there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

### III. The Age Discrimination Claims

#### A. Prima Facie Case

A plaintiff may establish an ADEA case either by presenting direct evidence of discrimination or by following the *McDonnell Douglas* burden-shifting approach. *Minadeo v. ICI Paints*, 398 F.3d 751, 763; (6th Cir. 2005); *Rowan v. Lockheed Martin Energy Sys.*, 360 F.3d 544, 547 (6th Cir. 2004). Because Herbick could not produce direct evidence of discrimination, she was

required to make out a prima facie case by showing that: (1) she was a member of a protected class, (2) who suffered an adverse employment action, (3) was qualified for the position, and (4) was replaced by a person outside the class. *Rowan*, 360 F.3d at 547. *See also McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

The district court granted summary judgment to the Board because Herbick failed to prove the fourth element of the prima facie case. The Board conceded that she had proved the first three elements, but argued at summary judgment and argues on appeal that she was not replaced by someone substantially younger than she. For her part, Herbick focused her argument almost entirely on the fact that the job, even though initially bid upon by Lutsch, eventually ended up going to Sainato. In light of Herbick's utter failure to demonstrate pretext with regard to the Board's proffered reasons for not re-hiring her, we decline to determine whether the unusual circumstances of this case, in which a bargaining unit teacher not substantially younger than Herbick successfully bid on the new position but immediately retracted that bid, preclude a finding that Herbick established the fourth prong of her prima facie case.

**B. Legitimate Nondiscriminatory Reasons as a Pretext for Discrimination**

Under the *McDonnell-Douglas* framework, once a plaintiff makes out a prima facie case, the defendant has the burden of articulating a legitimate, nondiscriminatory reason for the adverse employment action. *Burzynski v. Cohen*, 264 F.3d 611, 622 (6th Cir. 2001); *Barnett v. Dep't of Veterans Affairs*, 153 F.3d 338, 341 (6th Cir. 1998). If the defendant articulates such a reason, the plaintiff must demonstrate by a preponderance of the evidence that the defendant's proffered reasons were a pretext designed to hide age discrimination. *Burzynski*, 264 F.3d at 622. A plaintiff may accomplish this by showing either that (1) the proffered reason has no basis in fact, (2) the proffered

reason did not actually motivate the action, or (3) the proffered reason was insufficient to motivate the action. *Tinker v. Sears, Roebuck & Co.*, 127 F.3d 519, 523 (6th Cir. 1997).

The district court did not address the issue of legitimate nondiscriminatory reasons or pretext, having found that Herbick did not make out a prima facie case. However, the record clearly demonstrates that the Board is entitled to summary judgment on the basis of its unrebutted legitimate reasons for not renewing her contract. The Board's stated reasons for not considering Herbick for the open position, as articulated by Dr. Brobeck in his deposition, are legitimate and nondiscriminatory, and are unrefuted. Especially significant is that Herbick's own deposition testimony demonstrates that she was interested in continuing to work only on a part-time basis and that she never told anyone with decision-making authority that she was specifically interested in the new full-time position.

It was Herbick's burden to show that the Board's apparently legitimate reasons were pretextual. She has provided no basis upon which we could conclude that the Board's decision was in fact motivated by her age. Significantly, she does not argue that the decision to consolidate the positions was motivated by her age. In short, Herbick provides no evidence to support a finding that the Board's proffered reason has no basis in fact, or did not actually motivate its action, or was insufficient to motivate its action. *Tinker*, 127 F.3d at 523. Accordingly, the Board is entitled to summary judgment.

## C. State-Law Age-Discrimination Claim

We apply to claims brought pursuant to Ohio's age discrimination law the same analysis that we apply to ADEA claims. *See Minadeo*, 398 F.3d at 763; *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 357 (6th Cir. 1998). *See also* Ohio Rev. Code § 4112.02(A). Because we

conclude that the Board was entitled to summary judgment on the ADEA claim, we affirm as well the summary judgment in the Board's favor on the Ohio age discrimination claim.

### IV. The Promissory Estoppel Claim

Herbick's final claim is that the pay notice from Cougras's office was a promise of employment on which she relied to her detriment, and which the Board was estopped to withdraw. The district court granted summary judgment to the Board on Herbick's promissory estoppel claim as well. In Ohio, a promissory estoppel claim in an employment context requires that the plaintiff show (1) a clear and unambiguous promise, (2) reliance by the party to whom the promise is made, (3) the reliance was reasonable and foreseeable, and (4) the party claiming estoppel was injured by the reliance. *Mers v. Dispatch Printing Co.*, 483 N.E.2d 150, 152 (Ohio 1985). The district court held that Herbick's reliance on the pay notice generated from Cougras's office was unreasonable because Herbick admits both that she understood from the letter of April 22, 2002, that her contract had not been renewed for the 2002-2003 school year, and that she understood that only the Board—not individual administrators or supervisors—could hire her.

We find no evidence in this record from which a jury could find the elements of promissory estoppel. Even if the pay notice could be said to constitute a clear and unambiguous promise—a premise that we do not concede—there is no basis upon which a jury could find that Herbick's reliance on the notice was reasonable. In past years Herbick knew that she was not going to be employed until she was specifically asked in the summer to teach for the upcoming school year. She was never asked to do so in the summer of 2002. She was also aware that her two-day-a-week position no longer existed because it had been combined with another part-time position into a full-time job. Thus she knew that she could no longer work only two days per week as she had in the

8

past and as she expressly advised the superintendent she wanted to continue to do. Therefore, she could not reasonably have thought on August 20, 2002, when she purchased supplies and spent a day at the school preparing the classroom for the upcoming year, that she was employed for the 2002-2003 school year. The district court properly granted summary judgment to the Board on this claim.

## V. Conclusion

For the foregoing reasons, we **AFFIRM** the judgment of the district court granting summary judgment to the Board on Herbick's ADEA and state-law age discrimination claims and promissory estoppel claim.